# IN THE SUPREME COURT OF IOWA

No. 08–1231

Filed November 12, 2010

**STATE OF IOWA,**

Appellee,

vs.

**ROBERT L. HANES,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Black Hawk County, Jon Fister, Judge.

Appellant seeks review of conviction for willful injury causing serious bodily injury after jury trial. **DISTRICT COURT JUDGMENT REVERSED; CASE REMANDED.**

Mark C. Smith, State Appellate Defender, and Martha J. Lucey, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Elisabeth Reynoldson, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Kim Griffith, Assistant County Attorney, for appellee.

**STREIT, Justice**.

Robert Hanes was convicted by a jury of willful injury causing serious injury. At trial, the jury was instructed that potential penalties would include fines; community service; supervised or unsupervised probation; placement in a residential, correctional, or violator facility; or confinement in a county jail or prison. The jury instruction was improper and prejudiced Hanes. We reverse and remand.

## I. Background Facts and Prior Proceedings.

Robert Hanes was convicted after a jury trial of willful injury causing serious injury in violation of Iowa Code section 708.4(1) (2005). The verdict is based on an incident between Hanes and Nathanial Taylor on the morning of April 28, 2007. According to Taylor, he was walking to a cigar store to redeem bottles and cans. Taylor claims one week earlier Hanes had given him $2.25 to purchase gizzards for Hanes, and Taylor did not purchase the gizzards or return the money. Hanes asked about the money and was angry and yelling. Taylor offered Hanes his cans, but Hanes pulled out a knife and said "I'm going to kill you" and "stabbed [Taylor] in the face." Taylor then grabbed Hanes's hand holding the knife, hit Hanes in the head, and kicked Hanes until Hanes said "stop." Hanes picked up a bottle of whiskey and walked into the park.

Hanes claimed he did not know Taylor and encountered him while walking home. Hanes testified Taylor struck him with the bag of cans and bottles, and Hanes struck back. Hanes testified he was defending himself, and he had previous boxing experience.

Hanes filed a direct appeal and alleged a number of trial errors. First, Hanes complains a jury instruction improperly and incorrectly referenced potential penalties. Second, Hanes argues the district court improperly excluded hearsay testimony that should have been admitted

under the exception for statements made for purposes of medical diagnosis. The State argues this issue was not preserved.

Third, Hanes raises a number of issues through the mechanism of ineffective assistance of counsel because trial counsel did not object to certain matters. Hanes complains his trial counsel was ineffective for failing to object to the instruction regarding serious injury and for failing to object to the instruction regarding specific intent. Hanes raises ten additional issues pro se, including an argument that he was prejudiced by the prosecuting attorney's statement that the defense could have called additional witnesses if they had any information helpful to the defense. The court of appeals affirmed the conviction. Hanes sought further review.

## II. Scope of Review.

This court reviews challenges to jury instructions for correction of errors at law. *Boyle v. Alum-Line, Inc.*, 710 N.W.2d 741, 748 (Iowa 2006). Our review is to determine whether the challenged instruction accurately states the law and is supported by substantial evidence. *State v. Predka*, 555 N.W.2d 202, 204 (Iowa 1996). Error in a particular instruction does not require reversal unless the error was prejudicial to the complaining party. *State v. Spates*, 779 N.W.2d 770, 775 (Iowa 2010). When an ineffective-assistance-of-counsel claim is raised on direct appeal, we may choose to reach the issue if the record is adequate to decide the claim, or we may choose to preserve the claim for postconviction proceedings. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006).

## III. Merits.

**A. Jury Instruction Regarding Punishment.** The district court gave a jury instruction regarding penalty—instruction number one— which stated:

> The duty of the jury is to determine if the defendant is guilty or not guilty.
>
> In the event of a guilty verdict, you have nothing to do with punishment.
>
> Criminal offenses may be punished by fines or community service; by supervised or unsupervised probation; by placement in a residential, correctional or violator facility; or by confinement in a county jail or prison; depending on the circumstances of the case. Accordingly, you may neither speculate on what any punishment in this case might be nor let it influence your verdict.

The district court explained the penalty instruction as follows:

> And it's the stock instruction except that the second - - or the last paragraph is one that I've added and have been using because of questions that have come up from people during jury selection, whether they're concerned about punishment in one case or another. Frequently it comes up with drug crimes where people are concerned about issues and disparity in sentencing and so forth. But I think it's just emphasizing to the jury that they shouldn't speculate on any possible punishments.

Defense counsel objected to the instruction, arguing the instruction invites speculation on the part of the jury. Defense counsel also noted that community service, probation, or placement in a residential facility are not sentencing options for a forcible felony. The district court responded:

> Well that's why I put in the language depending on the circumstances of the case because that is absolutely right what you said in forcible felonies, there isn't community service and that's one of those cases. And so I am going to leave it in. I don't think it's a misstatement of the law. And I disagree with you that it causes speculation. It would be fruitless to speculate in cases like that. So the objection is overruled.

It is well-settled that juries should not be instructed regarding the statutory penalty for the charged offenses. *See State v. Purcell*, 195 Iowa 272, 274, 191 N.W. 849, 850 (1923) ("The trial court should in all criminal cases refrain from instructing the jury with regard to the

punishment provided by statute for the crime with which a defendant is charged."); *State v. O'Meara*, 190 Iowa 613, 625–26, 177 N.W. 563, 569 (1920) ("With the penalty to be imposed, the jury had no concern, and might not take the punishment to be inflicted into account, in passing on the issue as to the guilt or innocence of the accused."); *State v. Hatter*, 381 N.W.2d 370, 375 (Iowa Ct. App. 1985). As the court of appeals has explained, "a trial has one purpose—to seek the truth," and "[p]enalties have nothing to do with the factual determination that a defendant did or did not commit a crime." *Hatter*, 381 N.W.2d at 375. It is the legislature, and not the jury, that determines the appropriate penalty for the crime. *Id.* "[K]nowledge of the penalty would only serve to confuse and distract the jury from its unique and important judicial function." *Id.*

The State argues the penalty instruction is consistent with the rule prohibiting jury instruction on punishment because it "merely instructed the jury that penalties for crimes *in general* range from fines to imprisonment." We do not find this logic persuasive. The issue of punishment is not for the jury to consider or speculate about and knowledge about punishment can serve to confuse or distract the jury. *Id.* A generalized explanation of potential penalties wades into a topic about which the " 'jury had no concern.' " *Purcell*, 195 Iowa at 274, 191 N.W.2d at 850 (quoting *O'Meara*, 190 Iowa at 625–26, 177 N.W. at 569). Therefore, we hold the penalty instruction was improper.

The State argues even if the jury instruction was improper, reversal is not warranted under harmless-error analysis because Hanes was not prejudiced. We will not reverse unless an error in giving a particular instruction was prejudicial to the complaining party. *Spates*, 779 N.W.2d at 775. Prior case law regarding the showing required to

establish prejudice has been, at times, contradictory.  *Compare State v. Piper*, 663 N.W.2d 894, 914 (Iowa 2003) ("Any error with respect to the court's instruction of the jury will not support reversal unless the defendant shows prejudice."), *with State v. Davis*, 228 N.W.2d 67, 73 (Iowa 1975) ("Error in instructing the jury is presumed prejudicial unless the contrary appears beyond a reasonable doubt from a review of the whole case.").

The requirement that a jury instruction error result in prejudice before a conviction will be reversed mirrors the harmless-error analysis this court undertakes for any alleged error in a criminal trial.  *See State v. Jordan*, 779 N.W.2d 751, 756 (Iowa 2010).  This court has established standards for conducting harmless-error analysis based on whether the alleged error is of a constitutional magnitude.  When an error is of a constitutional dimension, the State must show beyond a reasonable doubt the error did not result in prejudice.  *State v. Traywick*, 468 N.W.2d 452, 455 (Iowa 1991).  Courts have applied this standard to errors of a constitutional dimension in jury instructions.[1]  *See Rose v. Clark*, 478 U.S. 570, 583, 106 S. Ct. 3101, 3109, 92 L. Ed. 2d 460, 474 (1986) (holding the question for constitutional errors is whether " 'on the whole record . . . the error . . . [is] harmless beyond a reasonable doubt' " (quoting *United States v. Hasting*, 461 U.S. 499, 510, 103 S. Ct. 1974, 1981, 76 L. Ed. 2d 96, 107 (1983) (alteration in original)))*; see also State v. Schuler*, 774 N.W.2d 294, 299–300 (Iowa 2009) (applying the standard that "prejudice is presumed but may be overcome upon a showing

---

[1]*Davis*, as noted above, held that jury instruction error is presumed prejudicial unless "the contrary appears beyond a reasonable doubt from a review of the whole case." 228 N.W.2d at 73.  This is the proper standard for constitutional errors.  To the extent *Davis* suggests this is the standard for all jury instruction errors, regardless of whether they are of a constitutional dimension, it is overruled.

beyond a reasonable doubt that the error was harmless" to reverse and noting but not deciding whether a jury instruction error regarding the elements of an offense requires per se reversal).

Similarly, the proper harmless-error analysis for errors in jury instructions that are not of a constitutional dimension, such as the penalty instruction here, is the same analysis applied to nonconstitutional trial errors. This court has held nonconstitutional harmless-error analysis begins with the question: " ' "Does it sufficiently appear that the rights of the complaining party have been injuriously affected by the error or that he has suffered a miscarriage of justice?" ' " *State v. Paredes*, 775 N.W.2d 554, 571 (Iowa 2009) (quoting *State v. Sullivan*, 679 N.W.2d 19, 29 (Iowa 2004)); *accord State v. Marin*, 788 N.W.2d 833, 836 (Iowa 2010) (holding instructional error not of a constitutional magnitude requires reversal when it sufficiently appears " 'the rights of the complaining party have been injuriously affected or that the party has suffered a miscarriage of justice' " (quoting *State v. Gansz*, 376 N.W.2d 887, 891 (Iowa 1985))). Under this analysis we presume prejudice and reverse unless the record affirmatively establishes there was no prejudice. *Jordan*, 779 N.W.2d at 756; *Paredes*, 775 N.W.2d at 571; *accord Marin*, 788 N.W.2d at 836. Our holding to the contrary in *Piper*, 663 N.W.2d at 914, is overruled.

We have previously found this test of prejudice was met when improperly admitted information was such that " 'the information unquestionably ha[d] a powerful and prejudicial impact' " on the jury. *Sullivan*, 679 N.W.2d at 30 (quoting *United States v. Johnson*, 27 F.3d 1186, 1193 (6th Cir. 1994)) (holding admission of prior bad acts was prejudicial). Our analysis of prejudice is also influenced by an evaluation of whether a jury instruction could reasonably have misled or

misdirected the jury. *See State v. Boner*, 186 N.W.2d 161, 166–67 (Iowa 1971) (finding prejudice because the improper inclusion of the word "negligent" may have led the jury to return a manslaughter conviction based on a lack of due care unaccompanied by the necessary wanton and reckless disregard or indifference to the safety of others); *cf. Anderson v. Webster City Cmty. Sch. Dist.*, 620 N.W.2d 263, 268 (Iowa 2000) (holding in a civil case the trial court commits prejudicial error when an instruction "materially misstates the law, confuses or misleads the jury, or is unduly emphasized"). We apply the principles outlined here to the defendant's challenge to the penalty instruction.[2]

The State argues the penalty instruction was not prejudicial because the instruction also emphasized the jury has "nothing to do with punishment" and "may neither speculate on what any punishment in this case might be nor let it influence [the jury's] verdict." Hanes argues he was prejudiced despite this admonition because the jury instruction improperly suggested probation, a fine, community service, or commitment to a residential facility were potential sentences, and the jury could have been misled by this information.

The State charged Hanes with willful injury causing serious injury pursuant to Iowa Code section 708.4(1). Under Iowa Code section 702.11, the charged crime is considered a forcible felony. Iowa Code section 907.3 prohibits use of deferred judgment and probation as sentencing options for a forcible felony such as willful injury causing

---

[2]The prejudice standard discussed above is appropriate where, as here, defense counsel objected to the instructional error at trial. When reviewing a claim of ineffective assistance of counsel because defense counsel failed to object, the defendant has the burden to show that " 'there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different.' " *State v. Hopkins*, 576 N.W.2d 374, 378 (Iowa 1998) (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674, 698 (1984)).

serious injury. Although the jury was also presented with lesser-included offenses, if they chose to convict for the charged offense, which they did, probation, a fine, community service, or commitment to a residential facility were not potential sentences.

The State points to *Purcell,* which held although it was error to instruct a jury on sentence, such error did not require reversal. *Purcell,* 195 Iowa at 275, 191 N.W. at 850. *Purcell* also stated, "It is obvious that, if the court instructed the jury with regard to the penalty provided for the crime charged, the penalty should be correctly given." *Id.* at 275–76, 191 N.W. at 850. Here, however, the instruction was not accurate. While generally, criminal conviction may lead to probation, fines, or community service, in this particular case, conviction of the crime charged could not.

The State argues Hanes was not prejudiced because the jury was instructed that the jury has "nothing to do with punishment" and "may neither speculate on what any punishment in this case might be nor let it influence [the jury's] verdict." We presume juries follow the court's instructions. *See State v. Owens,* 635 N.W.2d 478, 483 (Iowa 2001). Limiting instructions will at times help minimize potential prejudice. *Id.* We have previously found harmless error when the trial court struck erroneously admitted evidence from the record and immediately admonished the jury to disregard the evidence. *State v. Johnson,* 183 N.W.2d 194, 198 (Iowa 1971). Here, however, the jury admonition was not in response to testimony improperly volunteered by a witness but instead part of the same jury instruction containing inappropriate and erroneous information.

Although generally we presume juries follow instructions, here, this is not enough to overcome the presumption of prejudice that arises from the nonconstitutional jury instruction error because the penalty

instruction was contradictory. It directed the jury not to speculate, but also—incorrectly—suggested the defendant could receive a sentence other than prison time, including a fine or probation. One could argue the jury was not specifically instructed to consider the possible penalties. To the contrary, however, the inclusion of such information in the jury instructions caused the jury members to consider it. Jury members may have had differing beliefs regarding what sentences were available when they began serving on this jury, but after the district court's instruction, they all would have had an erroneous belief that the defendant could receive only a fine, probation, or community service.

An erroneous jury instruction cannot necessarily be overcome by part of the same instruction which correctly states the law. *See State v. Leins,* 234 N.W.2d 645, 648–49 (Iowa 1975) (reversing conviction when jury instruction gave both improper subjective entrapment test and proper objective entrapment test because the court was "unable to discern which rule the jury applied and must therefore reverse for a new trial"); *cf. Deboom v. Raining Rose, Inc.,* 772 N.W.2d 1, 13 (Iowa 2009) (holding plaintiff in discrimination case was prejudiced because one jury instruction incorrectly stated the standard for proving sex discrimination and another jury instruction correctly stated the standard). Based on the language of the penalty instruction, the jury may have incorrectly believed the district court always has discretion to sentence a defendant to any of the listed options. So, although the jury may not have speculated as to which of the listed options would ultimately be used in this case, the jury may have been prompted by this information to minimize the importance and gravity of their verdict, thinking the defendant might not be imprisoned.

Inclusion of the penalty instruction prejudiced Hanes. We reverse the verdict and remand for a new trial.

**B. Additional Issues.** Although we reverse on the issue of the penalty instruction, we take this opportunity to address those additional issues which may arise on retrial. *See Schuler*, 774 N.W.2d at 300.

1. *Statement for purposes of medical diagnosis.* Hanes argues the district court erred by failing to allow a nurse practitioner who treated Hanes's injuries to testify regarding Hanes's statements. Hanes asked the nurse practitioner to testify regarding his physical complaint when he arrived at the hospital for treatment. The State objected on grounds of hearsay, and the district court sustained the objection, excluding the evidence.

> Q. Okay. And when Mr. Hanes presented himself, your hospital - - to your hospital, what was his complaints? A. Mr. Hanes' complaint is that he had been hit - -
>
> [Prosecutor] Objection, Your Honor, to the hearsay.
>
> [Defense] Purposes of medical treatment, Your Honor.
>
> The Court: It's still - - If it's - - it's subject to that exception, but it's not admissible because it would be exculpatory.

Whether testimony is exculpatory or inculpatory is not a factor for courts to consider in determining the admissibility of statements made for purposes of medical diagnosis. Iowa Rule of Evidence 5.803(4) provides an exception from the hearsay rule when statements are

> made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

Statements made for such purposes are admissible, regardless of whether they are exculpatory or inculpatory, if they fit within the two-part test this court has adopted. The two-part test requires the

proponent of the statement to show: (1) the declarant's motive in making the statement is consistent with the purposes of promoting treatment, and (2) the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis. *State v. Hildreth*, 582 N.W.2d 167, 169–70 (Iowa 1998). We have previously considered whether a hearsay statement is exculpatory, but such consideration was done in the context of admissions by a party-opponent, which are not considered hearsay, Iowa R. Evid. 5.801(*d*)(2), and statements against interest, an exception to the hearsay rule, Iowa R. Evid. 5.804(*b*)(3). *See State v. Veal*, 564 N.W.2d 797, 808 (Iowa 1997) (holding "admissions by a party-opponent . . . are admissible only when offered *against* the party who made the statements" and "statements admitting to a lesser offense are [not] against interest when offered to defend against a more serious criminal charge"), *overruled in part on other grounds by State v. Hallum*, 585 N.W.2d 249, 253–54 (Iowa 1998).

Although Hanes's defense attorney asked the nurse practitioner about "a dialogue initiated for purposes of diagnosis or treatment," *Hildreth*, 582 N.W.2d at 170, and it appears the nurse practitioner's answer would likely fall within the exception to the hearsay rule, because there was no offer of proof, we do not know exactly what the nurse practitioner would have answered. We need not address whether error was preserved, whether the excluded testimony would meet the two-part test, and whether Hanes was prejudiced because we reverse on other grounds.

2. *Jury instruction regarding serious injury.* Hanes objects on appeal to a jury instruction—number eighteen—which defined "serious injury." Defense counsel did not object at trial. Hanes was charged with

willful injury causing serious injury under Iowa Code section 708.4(1). The serious injury instruction stated:

> A "serious injury" is a bodily injury which, if left untreated, creates a substantial risk of death or which causes serious permanent disfigurement, including scarring, or extended loss or impairment of the function of any bodily part or organ.

Hanes argues this jury instruction was improper in two ways. First, Hanes argues the words "if left untreated" improperly modified all three options: risk of death, serious permanent disfigurement, and loss or impairment of a bodily part or organ. Second, Hanes argues the inclusion of the phrase "including scarring" was also error. Hanes complains that under the facts of the case, inclusion of these two phrases allowed the jury to find serious injury by speculating as to whether and how the scarring, not the injury, would have been worse if left untreated. Hanes claims this is emphasized because the victim was treated by a plastic surgeon, and the jury might have believed the scarring would have been much worse without such treatment.

Serious injury is a defined term in the Iowa Code. According to Iowa Code section 702.18:

> 1. *"Serious injury"* means any of the following:
> . . . .
> *b.* Bodily injury which does any of the following:
> (1) Creates a substantial risk of death.
> (2) Causes serious permanent disfigurement.
> (3) Causes protracted loss or impairment of the function of any bodily member or organ.

The language of section 702.18 does not include the phrases "if left untreated" or "including scarring." The serious injury instruction given at trial is identical to the Iowa State Bar Association's Criminal Jury

Instruction for serious injury—number 200.22—except that the language "if left untreated" and "including scarring" were additions by the district court.

We agree with Hanes that the instruction improperly suggested scarring will always be considered serious permanent disfigurement. Serious permanent disfigurement is not defined and is a question for the jury to decide. Scarring may in some circumstances rise to the level of serious permanent disfigurement. *See State v. Phams*, 342 N.W.2d 792, 796 (Iowa 1983) ("We have recognized that the statutory definition of serious injury includes those 'injuries which leave the victim "permanently scarred or twisted . . ., [in contrast to] a black eye, a bloody nose, and even a simple broken arm or leg." ' " (quoting *State v. Epps*, 313 N.W.2d 553, 557 (Iowa 1981) (alteration in original))). These cases do not hold, however, that scarring is per se serious permanent disfigurement. A more proper jury instruction would not reference scarring, but leave it to the jury to determine whether a scar constitutes a serious permanent disfigurement.

We also agree that to the extent the phrase "if left untreated" is added to the statutory language, it would more properly be placed after the phrase "creates a substantial risk of death." The jury instruction as written is not entirely clear and could suggest to a jury that an injury which did not cause either serious permanent disfigurement or protracted loss or impairment of the function of a bodily member or organ, but could have without treatment, is always considered a serious injury. The statutory language defining serious injury does not allow such a result. Iowa Code section 702.18(1)(*b*)(1) defines serious injury to include a bodily injury which "[c]reates a substantial *risk* of death." (Emphasis added.) Addition of the words "if left untreated" to "creates a

substantial risk of death" is not error because the *risk* is that the injury would, if left untreated, result in death. In comparison, the *risk* that a bodily injury would have caused serious permanent disfigurement or protracted loss or impairment of the function of any bodily member organ if left untreated is not included in section 702.18. Iowa Code section 702.18(1)(*b*)(2) defines serious injury to include a bodily injury which "[c]auses serious permanent disfigurement." (Emphasis added.) This language requires that the serious permanent disfigurement actually occur. Similarly, section 702.18(1)(*b*)(3) defines serious injury to include a bodily injury which "[c]auses protracted loss or impairment of the function of any bodily member or organ." (Emphasis added.) This language requires that the protracted loss or impairment actually occur.

Although the serious-injury instruction was not consistent with the statutory definition, we need not address whether defense counsel's failure to object to the serious-injury instruction was deficient and prejudicial because we reverse on other grounds. Any instruction on "serious injury" given upon retrial should track the statutory definition of this term.

3. *Jury instruction regarding specific intent.* Hanes claims the jury instruction on specific intent—number twenty-one—erroneously failed to require the jury to find the proper mental state existed at the time of the offense. Defense counsel did not object to the specific-intent instruction at trial. The specific intent instruction provided:

> "Specific intent" means not only being aware of doing an act and doing it voluntarily, but in addition, doing it with a specific purpose in mind.
>
> Because determining the defendant's specific intent requires you to decide what the defendant was thinking when an act was done, it is seldom capable of direct proof. Therefore, you should consider the facts and circumstances surrounding the act to determine the defendant's specific

intent. You may, but are not required to conclude a person intends the natural results of his or her acts.

Specific intent does not have to exist for any particular length of time. *It is sufficient if it exists at any time before the act.*

(Emphasis added.) The first two paragraphs of this instruction are identical to the Iowa State Bar Association's Criminal Jury Instruction for specific intent—instruction number 200.2 The last paragraph was added to the uniform instruction by the district court. It states: "Specific intent does not have to exist for any particular length of time. It is sufficient if it exists at any time before the act."

Hanes complains the last sentence of the specific-intent instruction allowed the jury to find specific intent if at *any time* prior to the incident resulting in the victim's injuries, the defendant had specific intent. Hanes argues the jury could have improperly found Hanes had specific intent to harm Taylor during the alleged incident when Hanes paid Taylor $2.25 for gizzards and Taylor simply kept the money.

The State argues other portions of the jury instructions require a finding of specific intent at the time of the charged crime. The State points to the first paragraph of the specific-intent instruction which states specific intent requires "being aware of doing an act and doing it voluntarily, but in addition, *doing it with a specific purpose in mind.*" The State also points to the marshalling instruction—number fifteen—which stated in part:

In order to convict the defendant of Willful Injury Causing Serious Injury, the State must prove each of the following elements:

1. On or about the 28th day of April, 2007, the defendant assaulted Nathan Taylor.

2. The defendant specifically intended to cause a serious injury to Nathan Taylor.

The State argues when the jury instructions were read as a whole, these additional portions of the instructions made it clear to the jury they were required to find specific intent at the time of Taylor's injury.

A crime requires proof of specific intent when the statute's description of the proscribed act refers to the defendant's "intent to do some further act or achieve some additional consequence." *Eggman v. Scurr,* 311 N.W.2d 77, 79 (Iowa 1981) (quoting P. Johnson, *Criminal Law,* 329 (1975)). The specific intent is linked to the proscribed act and therefore must be present at the time of the proscribed act. We agree with Hanes that the last sentence of the specific-intent instruction improperly suggested the defendant need not have specific intent at the time of the alleged act.

However, because we reverse on other grounds, we need not address whether defense counsel's failure to object was deficient and caused Hanes prejudice. It is sufficient for purposes of this appeal to state the court should not instruct the jury upon retrial that the defendant's specific intent may exist at any time.

4. *Prosecution closing argument.* Hanes argues the State's closing argument was improper in his pro se supplemental brief. Hanes argues the State improperly suggested the defense should have called additional witnesses. The State misconstrues Hanes's objection to the prosecuting attorney's rebuttal. The State suggests Hanes's complaint is with his own lawyer's failure to call these two additional witnesses. Instead, Hanes's complaint is the prejudicial nature of the prosecuting attorney's statement in rebuttal shifting the burden to call witnesses to the defense.

The prosecution's opening statement referenced two witnesses, Paul McGonigle and Willie Brown, and explained their anticipated testimony. The State then failed to call these witnesses. Hanes's defense

attorney highlighted this inconsistency in his closing argument, stating "The state has the burden to prove its case. Where are these people if they're so important?" In response, the State argued in rebuttal:

> Now, the - - the defense brought up Paul McGonigle. And I mentioned Paul McGonigle in my opening. I also mentioned Willie Brown. You didn't see them; did you? No, we didn't call them. You know who else didn't call them? The defense didn't call them. The defense called witnesses. The defense can call any witness they so desire. If there was anything helpful for the defendant, the defense could have called Paul McGonigle or Willie Brown.
>
> . . . .
>
> . . . If there was anything the defense really wanted from either one of these individuals that they felt was beneficial or helpful to the defendant, they could have called them.

Hanes's defense attorney did not object.

The State bears the burden of proof in criminal cases. It is improper for the State to shift the burden to the defense by suggesting the defense could have called additional witnesses. " 'It is generally improper for a prosecutor to comment on a defendant's failure to call a witness. Such comment can be viewed as impermissibly shifting the burden of proof to the defense.' " *Byford v. State,* 994 P.2d 700, 709 (Nev. 2000) (quoting *Rippo v. State*, 946 P.2d 1017, 1026 (Nev. 1997) (citation omitted)); *cf. State v. Poppe*, 499 N.W.2d 315, 318 (Iowa Ct. App. 1993) ("[T]he prosecutor's suggestions about defendant counting on the witnesses not coming in to testify comes extremely close to suggesting the State does not bear the burden of proving defendant's guilt.").

It was appropriate for defense counsel to call attention to the State's failure to call these witnesses after the State had outlined the witnesses' expected testimony in the opening statement. It was not proper for the State to attempt to shift the burden to the defense to call the witnesses or to suggest the jury could infer from the defense's failure

to call the witnesses that they would not have said anything helpful to the defense. This situation is not one where the prosecutor generally referenced an absence of evidence supporting the defense's theory of the case. *See United States v. Emmert,* 9 F.3d 699, 702–03 (8th Cir. 1993); *State v. Swartz,* 601 N.W.2d 348, 353 (Iowa 1999).

Some courts have held an attempt by the State to shift the burden of proof may be cured by an instruction regarding the State's burden of proof. *Cook v. State,* 872 S.W.2d 72, 73–74 (Ark. 1994). Because we reverse on other grounds, we need not address whether defense counsel was deficient and caused prejudice by failing to object to the prosecutor's statements. We trust the prosecutor will refrain from similar statements upon retrial.

### IV. Conclusion.

The penalty jury instruction incorrectly suggested penalties of a fine, probation, or community service were available when they were not statutorily permissible. This instruction prejudiced the defendant because it misled the jury with respect to the possible consequences of its verdict and de-emphasized the gravity of the jury's decision. The conviction is reversed and the case is remanded to the district court.

**DISTRICT COURT JUDGMENT REVERSED; CASE REMANDED.**

All justices concur except Cady, J., who dissents.

**CADY, Justice (dissenting).**

I respectfully dissent. I would conclude the instructional error by the district court in this case does not require a reversal of the conviction and the grant of a new trial. I reach this conclusion because the error that occurred at trial was insignificant and did not result in any prejudice.

It has long been recognized in Iowa and across the nation that trial error does not require a new trial when the error does not result in prejudice. *Hammond v. Sioux City & P.R. Co.*, 49 Iowa 450, 453 (1878); *see also* 5 C.J.S. *Appeal and Error* § 965, at 327 (2007) [hereinafter *Appeal and Error*] (citing the general rule). Error inevitably operates within a trial because a trial operates within the hands of humans. A harmless-error standard of review for claims of trial error means the time and expense of endless retrials can be avoided without jeopardizing the requirement for a fair trial. *See Appeal and Error* § 965, at 327.

The difficulty in applying the harmless-error review lies in assessing the impact of the error on the verdict. In assessing whether a defendant has been injuriously affected by instructional error, the instruction itself must first be carefully considered. In this case, the district court properly instructed the jury that it must "determine if the defendant is guilty or not guilty" and that they "have nothing to do with punishment" in the event the verdict is guilty. *See State v. Piper*, 663 N.W.2d 894, 915 (Iowa 2003) (holding an instruction telling the jury it had nothing to do with punishment was properly given). The error occurred, however, when the district court further instructed the jury on the general types of punishment imposed for criminal offenses, including fines, various forms of probation, and imprisonment. This additional information was not only extraneous, it informed the jury of sentencing

options that would not actually be available to the sentencing court in the event the jury returned a verdict of guilty on the crime of willful injury. The crime of willful injury is a forcible felony. Iowa Code § 702.11(1) (2005) (including willful injury causing serious injury in list of offenses constituting forcible felonies). Probation is not an available sentencing option for a forcible felony. *Id.* § 907.3 (excluding deferred judgment, deferred or suspended sentence, and probation from available sentencing options for forcible-felony convictions).

The majority finds prejudice because it was possible the jury used the extraneous information in reaching its verdict.[3] The majority concluded the jury "may have" used the error to shirk its instructed duty to return a verdict of guilty only if convinced beyond a reasonable doubt and based only on the evidence presented at trial. It found the jury could have ignored these instructions and used the extraneous information to return a verdict of guilty under a belief that the district court would not later impose a sentence of imprisonment. Not only does this analysis use unsupported assumptions to create a false syllogism, it ultimately creates an irrefutable prejudice standard based on the existence of error itself. At its core, the majority holds that prejudice exists as long as it is conceivable that the jury could have considered extraneous, erroneous information. This holding is contrary to the very

---

[3]Importantly, harmless error is a standard of judicial review that requires judges to decide if error affected the verdict. *See O'Neal v. McAninch*, 513 U.S. 432, 436, 115 S. Ct. 992, 995, 130 L. Ed. 2d 947, 952 (1995) (stating the inquiry made by judges regarding harmless error is whether "the error substantially influenced the jury's decision"). It does not direct judges to simply be convinced that a party has shown prejudice or has not shown prejudice. *Id.* at 437, 115 S. Ct. 995, 130 L. Ed. 2d at 952 (citing Roger J. Traynor, *The Riddle of Harmless Error* 25–26 (1970) [hereinafter Traynor]). Regardless of the assistance provided by counsel on the issue, " 'it is still the responsibility of the . . . court, once it concludes there was error, to determine whether the error affected the judgment.' " *Id.* (quoting Traynor at 26).

purpose of the harmless-error doctrine as well as our test for assessing the impact of error. *See State v. Massey*, 275 N.W.2d 436, 439 (Iowa 1979) (stating the prejudice test applicable to trial errors not implicating a constitutional right is premised upon a determination of "whether it sufficiently appears that the rights of the complaining party have been injuriously affected or that the party has suffered a miscarriage of justice"). It is a step back to the nineteenth century Exchequer Rule where retrials of cases "seemed to" come to an end only when "the parties expired." 7 Wayne R. LaFave, et al., *Criminal Procedure* § 27.6(a), at 100 (3d ed. 2007).

We presume juries follow courts' instructions. *State v. Morrison*, 368 N.W.2d 173, 176 (Iowa 1985). Without such a presumption, our jury system would have little meaning or purpose. In truth, this case tests this conviction, and the outcome reveals the presumption is illusory.

Importantly, the district court did not instruct the jury to *consider* the various types of punishment in reaching its verdict; it only *informed* the jury of the types of punishment. Thus, this is not a case in which the jury was instructed to do or consider something that was incorrect so that we would presume the jury followed the incorrect directive in reaching its verdict. This is also not a case in which the court gave two conflicting directives so that it would be impossible to know if the correct directive was followed. *See State v. Leins*, 234 N.W.2d 645, 648–49 (Iowa 1975) (reversing conviction when jury instruction included both improper test and proper test for entrapment in same instruction and court could not determine which rule the jury applied). More importantly, this was not an error that gave the jury such damaging information that it could not reasonably be expected to actually disregard it. *See State v. Paden,*

199 Iowa 383, 386, 202 N.W. 105, 107 (1925) (holding certain evidence proffered and subsequently stricken at trial caused incurable prejudice because "[t]he evidence was toxic in character, and in our judgment it is beyond the realm of human possibility that the mind of the jury was not poisoned by the facts admitted").

Instead, the instruction only provided extraneous information to the jury, information that is generally known by jurors independent of the instruction by the district court. *See State v. Sullivan*, 679 N.W.2d 19, 30 (Iowa 2004) (stating prejudice is met only when the improper information unquestionably has a powerful impact on the jury). We have previously acknowledged that jurors not only "know that if they find a defendant guilty, he will be punished," but "[t]hey also know that the more serious the offense . . . , the more severe the punishment." *Piper*, 663 N.W.2d at 915. To be practical, as judges should, most jurors understand, right or wrong, that criminal defendants face either probation or incarceration if convicted. Thus, the district court gave the jury information consistent with common, preconceived notions. By analogy, we generally find erroneously admitted evidence to be harmless when the evidence is merely cumulative of other evidence properly admitted. *See State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998).

Moreover, we examine jury instructions for reversible legal error by considering the instructions as a whole, and "if some part was given improperly, the error is cured if the other instructions properly advise the jury as to the legal principles involved." *Thavenet v. Davis*, 589 N.W.2d 233, 237 (Iowa 1999). In this case, instead of instructing the jury to consider the extraneous, incorrect information, the district court immediately followed the extraneous information with a declaration to the jury that it "may neither speculate on what any punishment in this

case might be nor let it influence your verdict." Unlike the predicate informational material provided to the jury on punishment, this portion of the instruction was a specific directive or instruction for the jury to follow, and along with the other instructions given, it properly advised the jury of the legal principles applicable to the case. Consequently, the jury was given extraneous information and immediately told to disregard it.

The question is, therefore, simple. Do we or do we not believe jurors follow instructions? The jurors in this case were unequivocally told to disregard punishment. While it was odd and inconsistent for the district court to pass extraneous information along to the jury and then tell the jury to not consider it, it is just as inconsistent to presume the jury went ahead and considered the information. By analogy, we generally find the erroneous admission of evidence to be harmless when the trial court strikes the evidence from the record and immediately admonishes the jury to disregard the evidence. *State v. Johnson*, 183 N.W.2d 194, 198 (Iowa 1971). Until now, we have believed jurors follow instructions.

I believe jurors serve the justice system with a deep and abiding allegiance to their duties and responsibilities as instructed by the court. This belief supports our presumption that jurors follow instructions. Moreover, there is nothing about the extraneous information in this case, or any other circumstance of the case, to support a conclusion that a jury would be unable to disregard punishment after being informed of the various types of punishment available in criminal sentencing. The error in this case was harmless. Under the standard applied by the majority, the lack of prejudice becomes irrelevant because error will always result in a new trial.