# IN THE COURT OF APPEALS OF IOWA

No. 23-0928
Filed September 18, 2024

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JOSEPH KHADORI AWINO,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Story County, Adria Kester (trial and post-trial motions) and Amy M. Moore (sentencing), Judges.

The defendant appeals his convictions and sentences for four counts of willful injury causing serious injury. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Katherine Wenman, Assistant Attorney General, for appellee.

Considered by Tabor, C.J., Schumacher, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**POTTERFIELD, Senior Judge.**

A jury found Joseph Awino guilty of four counts of willful injury causing serious injury, and the district court sentenced Awino to four ten-year terms of incarceration to be served consecutively, for a total term of incarceration not to exceed forty years. Awino appeals his convictions and sentences, arguing (1) there is insufficient evidence to support the convictions; (2) the district court erred by admitting hearsay testimony; (3) his motion for substitute counsel for sentencing should have been granted; (4) the district court abused its discretion in denying his motion to continue sentencing, and (5) the district court abused its discretion in imposing consecutive sentences.

**I. Background Facts and Proceedings.**

The State charged Awino by trial information with four counts of willful injury causing serious injury, alleging he perpetrated the crimes against his teenaged son between September 2019 and May 2021. Awino pled not guilty, and the case proceeded to a jury trial.

The State presented undisputed evidence that the teen came to Iowa to live with Awino in September 2019. Almost immediately, Awino began "disciplining" the child by stabbing him with pens and markers. Then Awino began using other instruments as well, including a ruler and a small cutting board, before ultimately using a rope to whip the teen. By the time the teen's stepmother went to the local police in May 2021, Awino was forcing the teen to fully disrobe before flogging him. At trial, the teen testified the whippings took place about four times per week— sometimes for "a few minutes" and other times longer. The State introduced pictures that the teen took of his injuries at various times between September 2019

and May 2021, photos taken of the teen by various professionals once the police became involved, and ten videos recorded by the stepmother as she stood at the top of the stairs while Awino whipped the teen in the basement. The pediatric nurse practitioner who treated the teen at the STAR center estimated that "at least 75 percent of his body had injuries" when she saw him in May 2021. And at the criminal trial in July 2023, the teen testified, "I have most of [the scars] on my hands and the back and my chest, and then also some on my legs and feet, some around the ankles." He showed his arms and hands to the jury at the prosecutor's request. The jury found Awino guilty of all four counts of willful injury causing serious injury.

Before sentencing, Awino requested new counsel and moved for a continuance. Both of his requests were denied. The district court sentenced Awino to four consecutive ten-year terms of imprisonment. Awino appeals.

## II. Discussion.

### A. Sufficiency of the Evidence.

Awino challenges the sufficiency of the evidence to support each of his four convictions, arguing the State failed to prove that the teen suffered serious injuries, as defined by the law.[1] *See State v. Williams*, 674 N.W.2d 69, 71 (Iowa 2004) ("[T]he State must prove every element of the crime charged beyond a reasonable doubt.").

> "Substantial evidence is evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt."

---

[1] Awino asks us to review this claim de novo, arguing a constitutional right is implicated. But we are bound by current case law that requires us to review for correction of errors at law. *See State v. Schwartz*, 7 N.W.3d 756, 763 (Iowa 2024) ("This court reviews sufficiency-of-evidence claims for the correction of errors at law."); *State v. Hastings*, 466 N.W.2d 697, 700 (Iowa Ct. App. 1990) ("We are not at liberty to overturn Iowa Supreme Court precedent.").

> "Substantial evidence must do more than raise suspicion or speculation." In determining whether the verdict is supported by substantial evidence, this court views the evidence "in the light most favorable to the State, including all 'legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'"

*Schwartz*, 7 N.W.3d at 764 (internal citations omitted).

For the jury to find Awino guilty of willful injury causing serious injury, the State had to prove:

> 1. That between the dates of September 1, 2019 and May 22, 2021, [Awino] assaulted [the teen].
> 2. [Awino] specifically intended to cause a serious injury to [the teen.]
> 3. [Awino's] acts caused a serious injury to [the teen] . . . .

The jury was further instructed:

> The term "serious injury" as used in these instructions means a bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement or extended loss or impairment of the function of any bodily part or organ.
> The skin is the largest organ of the body. The skin and its derivatives (hair, nails, sweat and oil glands) make up the integumentary system. One of the main functions of the skin is protection. It protects the body from external factors such as bacteria, chemicals, and temperature.

Here, Awino argues the scarring the teen suffered does not rise to the standard of "serious permanent disfigurement." He points to the testimony of several State witnesses who opined that the injuries the teen suffered did not create a substantial risk of death or extended loss of impairment—other alternatives for meeting the "serious injury" standard. But that is not a compelling argument.

"Serious permanent disfigurement . . . is a question for the jury to decide." *State v. Hanes*, 790 N.W.2d 545, 554 (Iowa 2010). And "[s]carring may in some

circumstances rise to the level of serious permanent disfigurement." *Id.* "Iowa cases have contrasted serious permanent disfigurement with minor and temporary defects such as black eyes and bloody noses." *State v. Triplett*, No. 11-1528, 2012 WL 4900468, at *3 (Iowa Ct. App. Oct. 17, 2012) (citing *State v. Phams*, 342 N.W.2d 792, 796 (Iowa 1983)). The jury saw approximately 100 photos of the teen's injuries and scars—taken on various days beginning in May 2020 and following the final beating the teen endured in May 2021—and was able to see the teen's hands and arms at the time of the May 2023 trial. Reasonable jurors could conclude the scars reached the level of serious permanent disfigurement. *Cf. id.* (concluding "visible scar on the victim's forehead rose to the level of a serious permanent disfigurement"); *State v. Curry*, No. 19-1524, 2020 WL 4207402, at *2 (Iowa Ct. App. July 22, 2020) (concluding a scar from being shot, which was two to three inches long, could reasonably meet the threshold for serious permanent disfigurement). So substantial evidence supports Awino's convictions.

**B. Hearsay.**

Awino argues the district court wrongly allowed the admission of hearsay testimony when the State asked a witness—a child protective worker for the Iowa Department of Health and Human Services—whether the teen "suffer[ed] from any skin condition," and the witness testified, "No." Awino maintains he preserved error because he filed an uncontested motion in limine, in which he broadly asked that "the State be prohibited from offering any hearsay statements of the witnesses."

We recognize it might not have been immediately clear to Awino whether the State's question to the witness was eliciting hearsay. But on cross-

examination, the following exchange took place between defense counsel and the witness:

> Q. You were asked by the State if you were able to verify that [the teen] does not have a skin condition and you indicated that you were able to verify that [he] does not have a skin condition; correct? A. Yes. That is correct.
> Q. Proving a negative tends to be difficult, so I am curious, how did you go about proving that [he] did not have a skin condition? A. I asked [the teen] himself and then I called the nurse that completed his physical when he arrived here, which I think was through Mary Greeley or McFarland Clinic.
> Q. So you asked the 17 year-old whether he knew about any medical diagnoses? A. A rash.
> Q. And he said he did not? A. Correct.
> Q. And then you asked a nurse who had seen [the teen] two years prior? A. Yes.
> Q. Did that nurse remember speaking with [the teen] at that time? A. The nurse looked in his medical chart and said there was no noted rashes or any condition of the skin in his chart.
> Q. Okay. But did the—did that nurse actually recall the specific interaction with [the teen]? A. I don't recall if I asked that question or not.
> Q. And did the nurse's report specifically say we have verified that [the teen] does not have a skin condition? A. No.
> Q. So would it be fair to say that we have—that you have not been able to show that [the teen] does not have a skin condition but, rather, that you did not find evidence of a skin condition? A. I guess.

Awino did not challenge the witness's statement as improper hearsay either at the time it was made or after he obtained more background information about the source of the information on cross-examination. Because a hearsay objection was never made to or decided by the district court, we conclude this issue was not preserved for our review and do not reach the merits. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

### C. Substitute Counsel.

After his motions for new trial and in arrest of judgment were denied but before sentencing, Awino moved for substitute counsel. The district court took up

the motion at the beginning of the scheduled sentencing hearing, asking Awino and defense counsel to weigh in. Defense counsel did not object to new counsel being appointed, noting there "ha[d] been a breakdown of how the case could—should proceed." Awino added, "[W]e did have a disagreement and [defense counsel] suggested that it's not in good faith for us to continue together, so we have an agreement to part ways." The court responded: "Understood, sir, but that isn't sufficient for the Court to grant your request at this time. Do you believe that there's been a breakdown in communication with [defense counsel]? What is your reasoning for the request, sir?" Awino claimed defense counsel failed to properly prepare him for the post-trial hearings, stating in part, "Even when I came to the last hearing, I was just ambushed that was a hearing." Defense counsel disagreed, reporting that Awino was notified of the sentencing hearing, had participated in the presentence investigation (PSI), and that the completed PSI report was sent to him. He pointed out that the disagreement about how to proceed centered on the fact that Awino wanted him to file another motion for new trial, which defense counsel believed was frivolous and refused to file.[2] The State resisted the appointment of substitute counsel, arguing it would cause delay, which was unnecessary because there was no basis for further post-trial motions more than four months after the jury rendered a verdict. The district court denied Awino's motion, finding there was not sufficient cause to justify appointing substitute counsel.

---

[2] Defense counsel told the court that Awino wanted him to file a motion for new trial on the grounds that it was improper that the judge assigned to sentence him was different than the judge who presided over his criminal trial.

A defendant has the right to counsel at all critical stages of the criminal process, which includes sentencing. *State v. Boggs*, 741 N.W.2d 492, 506 (Iowa 2007). But the Sixth Amendment "does not guarantee a 'meaningful relationship between an accused and his counsel.'" *State v. Lopez*, 633 N.W.2d 774, 778 (Iowa 2001) (quoting *Morris v. Slappy*, 461 U.S. 1, 14 (1983)). So, "[w]here a defendant represented by a court-appointed attorney requests the court appoint substitute counsel, sufficient cause must be shown to justify replacement." *State v. Tejada*, 677 N.W.2d 744, 749 (Iowa 2004). "Sufficient cause includes a conflict of interest, irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant."[3] *Tejada*, 677 N.W.2d at 749–50 (citation omitted). "In determining whether to grant a request for substitute counsel, the court must balance the defendant's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice." *Lopez*, 633 N.W.2d at 779 (cleaned up). That said, "[t]he court has considerable discretion whether to grant

---

[3] In his appellate brief, Awino asserts that he "establish[ed] that his trial counsel had a conflict of interest," so prejudice is presumed. But Awino seems to conflate a "conflict of interest" and an "irreconcilable conflict." *Cf. United States v. Moore*, 159 F.3d 1154, 1158 (9th Cir. 1998) (distinguishing a "conflict of interest" as "the existence of competing interests potentially affecting counsel's capacity to give undivided loyalty to his client's interests" with "irreconcilable conflict between client and lawyer," such as when the defense attorney verbally assaulted the defendant with racial epithets); *see also State v. Watson*, 620 N.W.2d 233 (Iowa 2000) (reversing defendant's conviction and remanding for new trial where the defense attorney "had an actual conflict of interest that the trial court knew or should have known existed when the court became aware of counsel's dual representation of the defendant and a key prosecution witness"). As there is no indication Awino's counsel had an actual—or even a potential—conflict of interest, and Awino recognizes (in his reply brief) that his "conflict and breakdown in communication arguments are closely connected," we consider Awino's claim for substitute counsel under our usual "breakdown in communication" case law.

substitute counsel, and eleventh-hour requests for substitute counsel are generally disfavored." *Boggs*, 741 N.W.2d at 506.

"A complete breakdown in communication supports the appointment of substitute counsel because it deprives counsel of a critical component to an adequate defense—attorney-client communication." *Id.* But a defendant expressing "general frustration and dissatisfaction" with counsel is not enough— "[t]he focus of the inquiry is not on the defendant's relationship with his or her attorney, but 'the adequacy of counsel in the adversarial process.'" *Id.* (citation omitted). "[T]o prove a total breakdown in communication, a defendant must put forth evidence of a severe and pervasive conflict with his attorney or evidence that he had such minimal contact with the attorney that meaningful communication was not possible." *Tejada*, 677 N.W.2d at 752 (citation omitted). And even if there was a complete breakdown in communication, to gain relief from this court, Awino must show he was prejudiced by the denial of his request for substitute counsel. *See State v. Brooks*, 540 N.W.2d 270, 272 (Iowa 1995) ("A defendant [challenging the denial of a motion to substitute counsel] must ordinarily show prejudice, unless he has been denied counsel or counsel has a conflict of interest.").

We conclude Awino failed to show a complete breakdown in communication warranting substitute counsel. We recognize that Awino and defense counsel reached an impasse about filing a second motion for new trial. But while the two may have disagreed about the relative merits of the motion, it was past the window to file another post-trial motion, as nearly four months elapsed between the date the jury rendered its verdicts (January 26, 2023) and when Awino filed his motion for substitute counsel (May 18, 2023) and then, later, a pro se motion for new trial

(May 31, 2023). *See* Iowa R. Crim. P. 2.24(2)(a) (requiring a motion for new trial to be filed "not later than 45 days after verdict of guilty or special verdict upon which a judgment of conviction may be rendered and not later than 5 days before the date set for pronouncing judgment"). Plus, there was no indication the two were unable to communicate about how to proceed at sentencing. Awino testified at sentencing, with his counsel examining him, so he could tell the court about his medical issues, which he argued merited leniency. And counsel both argued for the minimum sentence and challenged what he understood to be the State's request to leave the issue of restitution open. We cannot say the district court abused its discretion in denying Awino's motion for substitute counsel.

**D. Motion to Continue Sentencing Hearing.**

Awino argues the district court abused its discretion in denying his oral motion to continue the sentencing hearing, pointing to counsel's argument that Awino

> made [him] aware of several medical conditions he has, which the Court having documentary evidence of those may affect the sentencing that the Court wants to hand down.
> He's obviously able to testify about two of them, but having them in writing and actually summon a physician saying that these are the issues he's facing carries more weight, so we would ask for a motion—we'd ask to continue sentencing in order to get those official documents.

The State resisted the motion to continue, which the district court denied. After which, Awino testified about his health. He explained he previously underwent surgery to remove his adrenal gland and place a medical device in his stomach that screens for cancer; because of this, he was "not able to walk for long distance without any help" and continued to experience left leg and butt pain. He continued

to require regular medical checkups and still had "traces" of cancer that doctors wanted to study. Awino finished his testimony by "request[ing], if there's anything other than prison, due to a medical condition and the fact that I'm not able to do some stuff, I would like to request the Court to find another option because I believe prison may not be the best thing for me." Awino also told the PSI preparer about his medical issues, explaining about the surgery and that he was "not physically capable to do some of the vigorous activities [he] did before the surgery."

Awino contends he should have been granted a continuance to secure mitigating evidence that was pertinent to sentencing, such as medical records. But it was not unreasonable for the court to deny the continuance when there were other means available to present that information without additional delay— through the PSI report and Awino's testimony. And Awino was given the opportunity to and did present evidence of his medical conditions. The State did not challenge the truth of Awino's health claims, nor was he asked any questions on cross-examination. With these facts, the district court did not abuse its discretion in denying Awino's motion to continue.

**E. Sentence Imposed.**

Awino challenges the sentence imposed by the district court. He argues the district court abused its discretion by deciding to impose four consecutive sentences after placing too much weight on the nature of the offenses and Awino's perceived lack of remorse.[4]

---

[4] Awino asks us to overrule Iowa case law that allows the sentencing court to consider lack of remorse as an aggravating factor. He argues that it is unfair to hold a defendant's lack of expressed remorse against them because "even at the time of sentencing, a defendant has 'not been finally and irrevocably adjudged

The court orally explained:

> As all four of these charges are forcible felonies, my discretion in sentencing is limited to determining whether to impose consecutive or concurrent sentences. Any alternative to prison is not an option available to me under Iowa law.
>
> . . . .
>
> I have thoroughly reviewed the presentence investigation report as well as the court file. I do note that the State has asked the Court to consider specific exhibits in determining sentence, and I've also had the opportunity to review the entirety of the evidentiary record up to this point in this matter, and utilizing all of those items I've just identified in determining appropriate sentence, I've considered Mr. Awino's age and education, his lack of any prior criminal history, his prior employment, family . . . circumstances, the nature of the offenses committed, and the harm to [his child], the facts upon which these charges were based, whether a weapon or force was used in the commission of those offenses, the need to protect the community, the State's recommendation, his defense counsel's recommendation, the recommendation of the PSI, Mr. Awino's statement here today, as well as those that are contained in the PSI, the propensities, needs, and the potential for rehabilitation of Mr. Awino, and again, the need for deterrence of Mr. Awino and others similarly situated to him from committing offenses of this nature, the lack of any documented evidence of substance abuse history, and other permissible factors supported by the record.
>
> It is now the order and judgment of the Court that you be and you are hereby committed to the custody of the Iowa Department of Corrections for an indeterminate prison term not to exceed ten years as to each count. You shall be given credit for any time served.
>
> As to the manner in which these sentences shall be served, again, the Court has the discretion to order whether these sentences are to be served concurrently or consecutively to one another. I find that the record overwhelmingly supports serving these sentences consecutively to one another.
>
> The nature of these offenses is utterly horrific. They occurred over the course of years, and [the teen] will have, no doubt, permanent scars of physical and mental variety for the rest of his life.
>
> Your statements here today continue to represent the fact that you take almost no accountability for your actions. I've listened to you here today. Your statements regarding [the teen] were very

---

guilty' since still available to the defendant is an appeal which 'is now an integral part of the trial system for finally adjudicating the guilt or innocence of a defendant.'" (quoting *Thomas v. United States*, 368 F.2d 941, 945 (5th Cir. 1966)). But we are not at liberty to overturn the Iowa Supreme Court precedent Awino challenges. *See Hastings*, 466 N.W.2d at 700.

telling. You stated that he came to this country in 2019, and the first thing that you stated that you wanted out of him—and that was your words—was obedience. And you used the term "obedience" repeatedly in your statements here today, and it is abundantly clear that it was a top priority for you as [the teen's] parent and that you were going to secure obedience through any means possible, which you did.

You spent the majority of your time addressing me here today discussing your problems and how prison would be a poor choice for you considering your health conditions. I respect and understand that you may be in ill health and may have conditions that are not conducive to spending this time in prison, but what was more telling to me was you spent almost no time expressing any remorse for specifically what you've done to [the child].

You stated, and I quote, "I'm really sorry for whatever happened." Again, not acknowledging what it is that you did specifically. You alluded to cultural differences that [the teen], unlike your other child, perhaps ascribed to a more American teen approach in watching TV before homework, as if somehow that transgression would even remotely, in any universe, justify your behavior.

You also stated, and I quote, "I messed up," and again, that you're responsible for, and I quote, "whatever happened." And you believe whatever's happened to you up to this point has been a lesson sufficient to be a deterrent for you going forward for this behavior.

You also interestingly repeatedly said that you never hit a teenager, as though you needed to somehow distinguish between ages of children as to whom you may have hit or what may be appropriate.

In short, your behavior and statements clearly reflect that you do not take responsibility for what you've done and have little, if any, remorse for [the teen] or your family other than mostly the impact that this has on you personally. I also find consecutive sentences are appropriate . . . for the fact that each of these constitutes a separate and distinct offense, as well as other permissible factors that are supported by the record.

Here, as the court recognized, because Awino was convicted of all forcible felonies, the court's discretion was limited to whether it would impose consecutive or concurrent sentences. *See* Iowa Code § 907.3 (2023) (preventing the court from granting a suspended sentence for a forcible felony). So the court only needed to provide adequate reasons to explain that decision. *Cf. State v. Hill*, 878

N.W.2d 269, 274 (Iowa 2016) (requiring court to give adequate reasons on the record to explain its exercise of discretion—including the decision to impose consecutive sentences). And here, we are able to review the court's exercise of discretion. *See State v. Thacker*, 862 N.W.2d 402, 408 (Iowa 2015) (recognizing that to meet the requirement of adequately stating the reasons for a sentence, "a 'terse and succinct' statement may be sufficient, 'so long as the brevity of the court's statement does not prevent review of the exercise of the trial court's sentencing discretion.'" (citation omitted)). We cannot say the district court placed too much weight on the nature of the offenses. *See State v. Hopkins*, 860 N.W.2d 550, 555 (Iowa 2015) ("When considering whether a court abuses its discretion by imposing a sentence of incarceration, we recognize the nature of the offense alone is not determinative. On the other hand, the seriousness and gravity of the offense is an important factor." (internal citation omitted)). And neither did it cross the "fine line between considering a defendant's lack of remorse and penalizing a defendant for refusing to plead guilty and insisting on [going] to trial." *State v. Knight*, 701 N.W.2d 83, 87 (Iowa 2005). So, we affirm Awino's sentences. *See State v. Goble*, 4 N.W.3d 700, 708 (Iowa 2024) (affirming when the defendant failed to "overcome the presumption [of validity] in favor of the sentence by affirmatively demonstrating the court relied on an improper factor" (alteration in original) (citation omitted)).

**III. Conclusion.**

Because it was not properly preserved, we do not consider Awino's hearsay claim. We affirm his convictions because they are supported by substantial evidence. And because the district court did not abuse its discretion in denying his

motion for substitute counsel for sentencing, his motion to continue sentencing, or in imposing sentence, we also affirm his sentences.

**AFFIRMED.**