STATE of Iowa, Appellee,

v.

Gregory Allen HASTINGS, Appellant.

No. 89–0773.

Court of Appeals of Iowa.

Dec. 27, 1990.

Linda Del Gallo, Acting State Appellate Defender, and Brian K. Sissel, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Sarah J. Coats, Asst. Atty. Gen., and James M. Metcalf, Black Hawk County Atty., for appellee.

Considered by OXBERGER, C.J., HAYDEN, J., and PERKINS, Senior Judge.*

HAYDEN, Judge.

The defendant, Gregory Allen Hastings, appeals his convictions, following a jury trial, for two counts of first-degree robbery.

___

* Senior Judge from the Polk County District Court serving on this court by order of the Iowa

The charges against Hastings arose out of two separate robberies which occurred on February 6, 1988. The morning after the robberies, the police visited Hastings at his home to question him as to his whereabouts. Later while at his parents' house, his mother mentioned the robberies. Hastings became nervous, as the police had already questioned him and knew he owned a gun. He went back to his home, took the gun, and threw it in the river. Hastings was arrested later and charged with the robberies.

At trial, Hastings filed a motion in limine. He claimed the State could not compel his wife to testify about privileged communications. The State wanted Mrs. Hastings to testify about her husband's clothing, her actions that evening, and his statements to her. The court sustained the motion on the third ground, but overruled the others.

During cross-examination the prosecuting attorney questioned Hastings about communications with his wife. The trial court previously sustained the motion in limine relating to these communications. Over his attorney's belated objections, Hastings stated he could not recall whether he had shown his wife the gun on the night of the robberies.

The State subpoenaed Mrs. Hastings to testify on rebuttal. Defendant Hastings objected once again. The trial court reversed its earlier ruling on the motion in limine. The trial court based its reversal on the fact Hastings' wife had previously communicated the privileged communications to the police when they questioned her.

Mrs. Hastings testified on rebuttal her husband showed her the gun and he said it was for road hunting. She also testified he had it in his coat pocket when he came home from the bar the night of the robberies.

Hastings argues the trial court erred in compelling Mrs. Hastings to testify to priv-

Supreme Court.

ileged communications in violation of Iowa Code section 622.9.

Our scope of review is on errors of law. Iowa R.App.P. 4.

## I. SPOUSAL PRIVILEGE

The main issue in this case is the prosecution's use, over defendant's objection, of communications made to his spouse. The evidence is undisputed: the communications at issue were private between the defendant and his wife in their residence.

■ Both the Iowa Code and Iowa case law are explicit and pointed on their protection of communications solely between husband and wife. Iowa Code § 622.9; *State v. Levy*, 160 N.W.2d 460 (Iowa 1968).

> Neither husband nor wife can be examined in any case as to any communication made by the one to the other while married, nor shall they, after the marriage relation ceases, be permitted to reveal any such communication made while the marriage subsisted.

Iowa Code § 622.9.

"[T]he marital privilege statute, section 622.9, is very broad, prohibiting disclosure of *any* communication without express exceptions." *State v. Klindt*, 389 N.W.2d 670, 675 (Iowa 1986). Only two exceptions to the marital privilege are recognized. One is for crimes against one spouse by the other. *Id.* at 676. The other exception is for child abuse. Iowa Code § 232.74; *State v. Johnson*, 318 N.W.2d 417, 438–39 (Iowa 1982). Neither of the two exceptions are present here. The communication at bar clearly falls within the statutory proscription on testifying to privileged spousal communications.

The trial court sustained a motion in limine on Hastings' communications with his wife concerning the gun. Included in the court's ruling in limine were the communicative actions connected with the verbal communications. *See J. Wigmore, Evidence* § 2337, p. 657 (McNaughton rev. 1961). The trial court found such testimony would be "obviously very prejudicial."

Hastings did not mention these communications with his wife on direct examination. It was on cross-examination the prosecutor, in disregard for the motion in limine, began to question the defendant on these communications. The defendant's attorney belatedly objected. The prosecutor then introduced the wife's statement in rebuttal.

■ The State concedes on appeal the wife may not waive the privilege for her spouse. The defendant, not the spouse testifying, is the holder of the privilege. *See* 8 *J. Wigmore, Evidence* § 2340, p. 670 (McNaughton rev. 1961); *United States v. Figueroa–Paz*, 468 F.2d 1055, 1057 (9th Cir.1972).

■ The State now argues Hastings waived any objection to the introduction of the marital communication due to his late objection on cross-examination. The State further urges us to override *Burgess v. Sims Drug Co.* and its progeny.

> But we are not willing to hold that the failure to insist on this privilege makes the testimony which he may give on cross-examination voluntary, in such a sense as to constitute a waiver of his privilege with reference to the communication ... any objection of the witness on cross-examination to testify as to the communication might well have been prejudicial, and therefore that the answer of the witness with reference thereto cannot be treated as a waiver of the privilege, for it was essentially not voluntary.

*Burgess v. Sims Drug Co.*, 114 Iowa 275, 280, 86 N.W. 307, 308 (1901).

The Iowa Supreme Court has consistently held to the rationale of *Burgess*. Further, the supreme court has sharply criticized such trial tactics as employed in this case by the prosecutor. *See, e.g., State v. Levy*, 160 N.W.2d 460, 468 (Iowa 1968). "We have said several times that it is reversible error to require a plaintiff on cross-examination to say whether he is willing to waive the privilege which the statute affords." *Levy*, 160 N.W.2d at 468 (quoting *Johnson v. Kinney*, 232 Iowa 1016, 1024, 7 N.W.2d 188, 193 (1942)). *See also State v. Schier*, 47 Or.App. 1075, 615 P.2d 1147, 1150 (1980) (citing *Burgess* and re-

versing the trial court on almost the same facts on this issue).

The facts on this issue parallel to some degree those in *Levy*. Iowa and the United States Supreme Court have clearly enunciated the obligations of prosecuting attorneys in this regard.

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he in a peculiar and very definite sense is the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Viereck v. United States*, 318 U.S. 236, 248, 63 S.Ct. 561, 566, 87 L.Ed. 734, 741 (1943) (quoted in *Levy*, 160 N.W.2d at 467).

We determine *Levy* is controlling in the present case. We are not at liberty to overturn Iowa Supreme Court precedent. We decline the State's invitation to overrule *Burgess* and its progeny.

## II. HARMLESS ERROR

■ The State, however, attempts to get around the clear words of several Iowa Supreme Court cases by urging us to find the deliberate violation of both the defendant's spousal privilege and the trial court's motion in limine to be harmless error. The State argues Hastings' wife's testimony merely corroborated other testimony. However, the State ignores the import of impeaching the defendant's own testimony by use of his privileged communication with his wife.

The prosecution used the wife's testimony to show Hastings was a liar. This undercut any credence the jury may have given to Hastings' own testimony. Further, it stamped him as a liar and a bad person, making the jury much more amenable to finding this defendant guilty and punishing him.

Additionally, the wife's testimony introduced new evidence. It tended to show defendant was trying to keep his possession of the gun a secret. This of course would tend to show guilty knowledge of some sort. Again, this information would make the jury more susceptible to a verdict of guilty.

Finally, her testimony showed Hastings returned home from the bar on the night of the robberies with the gun in his coat pocket. This was totally new evidence and clearly incriminating under the circumstances.

There is a heightened standard for determining prejudicial error in criminal cases. "[W]e must assess whether the other evidence is so overwhelming as to prove the error *harmless beyond a reasonable doubt*." *State v. Sowder*, 394 N.W.2d 368, 372 (Iowa 1986) (citing *Chapman v. California*, 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705, 710–11 (1967); *State v. Craney*, 347 N.W.2d 668, 673–76 (Iowa 1984); *State v. Ware*, 205 N.W.2d 700, 704–05 (Iowa 1973).

We cannot say this deliberate violation of the motion in limine and the introduction of privileged spousal communications was harmless beyond a reasonable doubt. We reverse on this issue.

## III. OTHER ISSUES

Hastings presents three other issues on appeal. These issues may arise again at a new trial. We deal with each of them in turn.

### A. *Common Scheme or Plan*

■ Hastings argues the trial court erred in overruling his motion to sever the two robbery counts for separate trial.

> Two or more public offenses which arose from the same transaction or occurrence or from two or more transactions or occurrences constituting parts of a com-

mon scheme or plan may be alleged and prosecuted as separate counts in a single complaint, information or indictment, unless, for good cause shown, the trial court in its discretion determines otherwise....

Iowa R.Crim.P. 6(1).

After reviewing the facts, we determine there was sufficient evidence of a common scheme or plan presented at trial to prosecute the two crimes at one trial. *See State v. Lam,* 391 N.W.2d 245, 249–50 (Iowa 1986); *State v. Blair,* 362 N.W.2d 509, 511–12 (Iowa 1985).

We affirm the trial court on this issue.

### B. *Relevancy of Evidence*

The State introduced a toy pistol and a photograph of the toy pistol at trial. The toy gun was seized from Hastings' residence. It was similar to the one used in the robberies. Hastings objects on grounds the gun and photo were irrelevant and unduly prejudicial.

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Iowa R.Evid. 401.

"All relevant evidence is admissible ..."
Iowa R.Evid. 402.

We determine the toy gun and photo has a tendency to make the existence of a fact or consequence more or less probable, namely, Hastings' access to a gun similar to that used in the robberies. Thus, this evidence is relevant. *See State v. Wilson,* 406 N.W.2d 442, 447 (Iowa 1987).

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Iowa R.Evid. 403.

After reviewing the evidence and the State's case, we determine the introduction of the gun and photo were not unfairly prejudicial. Far more damaging to Hastings' case than the introduction of a toy gun was Hastings' own evidence he disposed of his real gun as soon as he found out he was a suspect.

The trial court did not abuse its discretion by allowing the introduction of this evidence. *See State v. McGhee,* 280 N.W.2d 436, 440–41 (Iowa 1979). We affirm the trial court on this issue.

### C. *Denial of Directed Verdict of Acquittal*

Hastings argues the trial court erred in denying his motion for a directed verdict of acquittal.

A trial court's refusal to direct a verdict for a defendant will withstand challenge if there is any substantial evidence in the record tending to support the charge. Substantial evidence means such evidence as could convince a rational trier of fact that the defendant is guilty of the crime charged beyond a reasonable doubt.

*State v. Aldape,* 307 N.W.2d 32, 39 (Iowa 1981).

We determine there was substantial evidence of Hastings' guilt. The trial court was justified in submitting the question of his guilt or innocence to the jury. We affirm on this issue.

We determine the prosecutor committed reversible error in cross-examining Hastings as to his privileged spousal communications, in violation of the motion in limine. We determine the trial court committed reversible error in allowing Hastings' wife to testify as to these communications on rebuttal. We accordingly reverse Hastings' conviction on these grounds.

We affirm on all other issues.

AFFIRMED IN PART AND REVERSED IN PART.