# IN THE COURT OF APPEALS OF IOWA

No. 13-0962
Filed September 17, 2014

**STATE OF IOWA,**
          Plaintiff-Appellee,

**vs.**

**MICHAEL JAMES GROMMET,**
          Defendant-Appellant.
_____

          Appeal from the Iowa District Court for Black Hawk County, Andrea J. Dryer, Judge.

          Michael Grommet appeals from the judgment and sentence entered after he was found guilty of theft in the first degree as a habitual offender. **AFFIRMED.**

          Mark C. Smith, State Appellate Defender, and Martha J. Lucey, Assistant Appellate Defender, for appellant.

          Thomas J. Miller, Attorney General, Katie Fiala, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and James J. Katcher, Assistant County Attorney, for appellee.

          Considered by Vaitheswaran, P.J., and Doyle, and McDonald, JJ.

**DOYLE, J.**

Michael Grommet was charged with the theft of a 2005 Chevrolet Tahoe from a Cedar Falls automobile dealership. Following a trial to the court, Grommet was found guilty of the crime of theft in the first degree as a habitual offender, in violation of Iowa Code sections 714.1(1), 714.2(1), and 902.8 (2011). He appeals, arguing he was not guilty of theft by taking because the dealership had permitted him to take the vehicle on a test drive. We affirm.

On April 13, 2012, Grommet came into Wheels Unlimited, a small Cedar Falls automobile dealership, and told Brett Sapp, the sales manager, that he was interested in a 2005 Chevrolet Tahoe on the lot. Grommet identified himself as "Jeremy" and told Sapp he had a vehicle to trade in. Sapp saw that this vehicle was a newer car, and Grommet told him he owned the trade-in car free and clear and that he was going to get the rest of the money from his mother-in-law. There was no discussion as to how much Grommet would receive for the trade-in.

Grommet said he wanted to test drive the Tahoe. Since Sapp was the only salesperson then present at the dealership, he could not accompany Grommet on a test drive. So, Sapp allowed Grommet to go on a solo test-drive. Grommet drove the Tahoe away from the dealership lot at about 1:00 p.m. After a few hours went by, Sapp became concerned about Grommet's whereabouts. Grommet then called Sapp and said he was at the bank getting money. Sapp and Grommet had not yet discussed exactly how much money Grommet would need to purchase the Tahoe. When Grommet had still not returned by 6:00 p.m., the dealership's closing time, Sapp contacted the police to report that the Tahoe

had been taken. Officers located the Tahoe the next morning in a driveway at an Evansdale residence. Grommet was in the driver's seat.

Grommet was charged with several alternatives of the crime of theft: "theft by taking," in violation of Iowa Code section 714.1(1); "theft by misappropriation," in violation of section 714.1(2); and "theft by deception," in violation of section 714.1(3). A bench trial was conducted after Grommet waived his right to a jury trial. The trial court made extensive fact findings. In light of the narrow issue presented on appeal, it would serve no useful purpose to repeat the court's findings here. The court concluded:

> The court finds beyond a reasonable doubt that on or about April 13, 2012, [Grommet] knowingly took possession or control of a white 2005 Chevrolet Tahoe that belonged or was in the possession of Wheels Unlimited. After giving a false name, [Grommet] obtained possession of the Tahoe from Wheels Unlimited by representing that he only intended to take the Tahoe for a test drive. [Grommet] then drove the Tahoe away from the dealership lot. Wherever [Grommet] was with the Tahoe between 1:00 p.m. until 11:00 p.m., [Grommet] did have the Tahoe near the intersection of Highway 30 and 21 near Tama/Toledo when the Tahoe was towed at about 11:00 p.m. on April 13, 2012. [Grommet] then drove the Tahoe back to Waterloo and continued to drive it until his arrest in Evansdale.

The court found Grommet guilty of the "theft by taking" alternative of the crime of theft, in violation of section 714.1(1). Grommet now appeals from his judgment and sentence.

The State was required to prove the following elements:

> (1) On or about April 13, 2012, Grommet knowingly took possession or control of a motor vehicle;
> (2) Grommet did so with the specific intent to permanently deprive Wheels Unlimited of the motor vehicle;
> (3) at the time of the taking, the motor vehicle belonged to or was in the possession of Wheels Unlimited;
> (4) and the motor vehicle exceeded $10,000 in value.

*See* Iowa Code §§ 714.1(1), .2(1); *State v. Schminkey*, 597 N.W.2d 785, 789 (Iowa 1999).

On appeal, Grommet only challenges the first element of the offense. Specifically, Grommet asserts "[t]he record shows that Grommet did not commit a theft by taking in violation of Iowa Code section 714.1(1). The record fails to demonstrate Grommet unlawfully took possession of the vehicle because Sapp permitted him to take the vehicle." We disagree because Iowa Code section 714.1(1) does not concern itself with the manner by which a person acquires the property of another.

Our supreme court has previously addressed the issue:

> Iowa, like many other states following the Model Penal Code, has abandoned the common law asportation requirement. Our definition of "theft" under Iowa Code section 714.1 is based on the Model Penal Code. We now define theft as the possession or control of another's property with intent to deprive the owner thereof. The key to our statute is the words "possession or control." In determining the meaning of "possession" and "control," we look to the Model Penal Code for guidance as our statute is modeled after it. The Model Penal Code contemplates "control" of the object to begin when the defendant "use[s] it in a manner beyond his authority." The method of exerting control over the object of the theft is important only insofar as it "sheds light on the authority of the actor to behave as he did." Our statute replaces the common law element of "taking" with "possession." The Model Penal Code provides a person commits theft if he or she "unlawfully takes, or exercises unlawful control over" the property of another. A taking in this sense concerns whether the offender exerted control over the object "adverse to or usurpatory of the owner's dominion." That is, one possesses an object if he or she secures dominion over it. To summarize the above concepts, "possession or control" begins and a theft is completed when the actor secures dominion over the object or uses it in a manner beyond his authority.

*State v. Donaldson*, 663 N.W.2d 882, 885 (Iowa 2003) (internal citations and footnotes omitted). Grommet suggests the *Donaldson* decision "must be clarified

and/or overruled." We are not at liberty to upend supreme court precedent. *See State v. Hastings*, 466 N.W.2d 697, 700 (Iowa Ct. App. 1990) ("We are not at liberty to overturn Iowa Supreme Court precedent."); *State v. Hughes*, 457 N.W.2d 25, 28 (Iowa Ct. App. 1990) (citing *State v. Eichler*, 83 N.W.2d 576, 578 (Iowa 1957) ("If our previous holdings are to be overruled, we should ordinarily prefer to do it ourselves.")). Furthermore, *Donaldson* is clear. The key inquiry is whether the person exercised unlawful control over the property of another, not the manner of taking.

Although Grommet had permission to use the Tahoe at the moment of acquisition, his authorization to use the vehicle was limited—he was only authorized to take it for a test drive. Grommet's unlawful "possession or control" began and a theft was completed when he used the vehicle in a manner beyond the authorization he was granted. The record establishes Grommet took possession and control of the Tahoe for an extended period of time and that he took the vehicle with the intent to permanently deprive its lawful owner. The district court's findings of guilt are supported by substantial evidence.

**AFFIRMED.**