# IN THE COURT OF APPEALS OF IOWA

No. 15-0128
Filed February 10, 2016

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**PATRICK EDOUARD,**
     Defendant-Appellant.
_____

Appeal from the Iowa District Court for Marion County, Paul R. Huscher, Judge.

Patrick Edouard appeals the trial court's determination that the confidential medical records he sought to discover contain no exculpatory evidence. **AFFIRMED.**

Angela L. Campbell of Dickey & Campbell Law Firm, P.L.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik and Sheryl A. Soich, Assistant Attorneys General, for appellee.

Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**POTTERFIELD, Presiding Judge.**

Patrick Edouard, a minister, was convicted of four counts of sexual exploitation by a counselor or therapist and one count of engaging in a pattern or practice to engage in sexual exploitation by a counselor or therapist after engaging in sex acts with four members of his congregation, including W.B. Our supreme court, on further review, determined the district court erred in denying Edouard's request for in camera review of W.B.'s counseling records and remanded the case to the trial court for the limited purpose of reviewing the records to determine whether they contain exculpatory evidence entitling Edouard to a new trial. *State v. Edouard*, 854 N.W.2d 421, 442-43 (Iowa 2014). After conducting its review, the trial court determined the records contain no exculpatory evidence. Edouard appeals.

Without having access to the records, Edouard contends they "presumably" have exculpatory information. Specifically, he posits the records will offer exculpatory evidence concerning whether W.B. was suffering from a mental disorder or defect and whether he was treating her for that disorder or defect.[1] Although Edouard argues it is "likely" the records contain exculpatory

---

[1] The jury was instructed that in order to find Edouard guilty of sexual exploitation by a counselor or therapist, the State had to prove:
      1) The defendant engaged in sexual conduct with [W.B.];
      2) The defendant did so with the specific intent to arouse or satisfy the sexual desires of either himself or [W.B.];
      3) The defendant was then a counselor or therapist; and
      4) [W.B.] [was] then receiving mental health services from the defendant, or had received mental health services from the defendant within one year prior to the conduct.
*See* Iowa Code § 709.15(2)(a)(3) (2011). Iowa Code section 709.15 defines a "counselor or therapist" as "a physician, psychologist, nurse, professional counselor,

evidence, he concedes that he "and his counsel still do not know" because his counsel was unable to review the records.

It is this lack of knowledge that forms the basis for Edouard's appeal: he argues his due process and confrontation rights have been impaired by the record-review procedure utilized below. In support of his argument, he cites the "challenges" posed by in camera inspection as discussed in Justice Appel's

---

social worker, marriage or family therapist, alcohol or drug counselor, member of the clergy, or any other person, whether or not licensed or registered by the state, who provides or purports to provide mental health services." *Id.* § 709.15(1)(a). It defines "mental health services" as "the treatment, assessment or counseling of another person for a cognitive, behavioral, emotional, mental, or social dysfunction, including an intrapersonal or interpersonal dysfunction." *Id.* § 709.15(1)(d).

Edouard maintains W.B. was not suffering from a mental disorder or defect; accordingly, he could not have treated her for a mental disorder or defect. In his view, these are actual elements of the charges for which he was found guilty, but his interpretation of section 709.15 is too narrow. The State is not required to prove the person in receipt of the counseling or therapy has a mental dysfunction. Under the definition provided in section 709.15(1)(d), "mental health services" include those provided for assessment purposes, and a person may be assessed for a mental dysfunction without having one. More importantly, limiting the scope of section 709.15 thusly would exclude from protection against sexual exploitation those receiving treatment or counseling for cognitive, behavioral, emotional, or social dysfunction. We recognize that our supreme court held in Edouard's earlier appeal that the existence or lack of a diagnosis *may* be relevant to whether a defendant provided "mental health services." *Edouard*, 854 N.W.2d at 442. However, a finding of guilt does not turn on whether the person who has been sexually exploited meets the diagnostic criteria of the Diagnostic and Statistical Manual of Mental Disorders (commonly referred to as DSM). It is the subject matter of the counseling or therapy, as well as the relationship between the counselor or therapist and the person receiving those services that controls whether a sex act between the two constitutes sexual exploitation. It is the nature of this relationship that makes one vulnerable to sexual exploitation. *See, e.g.*, Eduardo Cruz, *When the Shepard Preys on the Flock: Clergy Sexual Exploitation and the Search for Solutions*, 19 Fla. St. U. L. Rev. 499, 501 (1991) ("Sexual relationships between clergy and parishioners do not fall within the category of voluntary relationships between consenting adults."); Linda Jorgenson, Rebecca Randles & Larry Strasburger, *The Furor over Psychotherapist-Patient Sexual Contact: New Solutions to an Old Problem*, 32 Wm. & Mary L. Rev. 645, 651-64 (1991) (detailing the unique nature of the therapeutic relationship and why sexual contact is problematic); Janice D. Villiers, *Clergy Malpractice Revisited: Liability for Sexual Misconduct in the Counseling Relationship*, 74 Denv. U. L. Rev. 1, 3 (1996) (proposing that sexual misconduct of clergy with a counselee amounts to malpractice); Denise LeBoeuf, Note, *Psychiatric Malpractice: Exploitation of Women Patients*, 11 Harv. Women's L.J. 83, 85 (1988) ("The psychotherapist/patient relationship diminishes the patient's capacity to consent.").

special concurrence to *State v. Neiderbach*, 837 N.W.2d 180, 230-37 (Iowa 2013),[2] and claims this process "cannot comport with due process or the confrontation clauses of the United States or Iowa constitutions." However, our supreme court has held the procedure set forth in Iowa Code section 622.10(4) (2013), which was followed by the trial court here, comports with the due process and fair trial protections afforded by the United States and Iowa Constitutions. *State v. Thompson*, 836 N.W.2d 470, 485-90 (Iowa 2013) (rejecting the defendant's constitutional challenge to the requirement that the in camera inspection be performed by the court, not defense counsel). While Edouard maintains this procedure leaves him at a disadvantage in arguing the records contain exculpatory evidence on appeal, "[w]e are not at liberty to overturn Iowa Supreme Court precedent." *State v. Hastings*, 466 N.W.2d 697, 700 (Iowa Ct. App. 1990). Should the supreme court wish to revisit its prior rulings on the matter, it can take the issue up on further review.

Accordingly, we affirm.

**AFFIRMED.**

---

[2] Justice Appel emphasizes the need for the district court to enter "an appropriate order that provides for meaningful appellate review" in order to ensure due process is afforded. *Neiderbach*, 837 N.W.2d at 235 (Appel, J., concurring). He then describes steps that may be taken to allow meaningful appellate review, suggesting "the district court should outline the manner in which it reviewed the records, generally outline the factual and legal issues presented in the motion to produce, and provide a sufficient explanation of the court's decision." *Id.* Edouard does not argue the district court's order fails to provide sufficient detail for a meaningful appellate review.