## IN THE COURT OF APPEALS OF IOWA

No. 16-0918
Filed August 17, 2016

**IN THE INTEREST OF C.F.-H.,**
**Minor Child,**

**C.H., Father,**
 Appellant.

_____

Appeal from the Iowa District Court for O'Brien County, David C. Larson, District Associate Judge.

A father appeals from the order terminating his parental rights. **AFFIRMED.**

Jared R. Weber, Orange City, for appellant father.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Tisha M. Halverson of Klay, Veldhuizen, Bindner, DeJong, Halverson & Winterfeld, P.L.C., Paullina, attorney and guardian ad litem for minor child.

Considered by Danilson, C.J., and Mullins and Bower, JJ.

**MULLINS, Judge.**

A father appeals the juvenile court's order terminating his parental rights to his child, C.F.-H. The father argues the State failed to prove the statutory grounds for termination by clear and convincing evidence and termination is not in the child's best interests. He also asserts he shares a bond with the child such that termination would be detrimental to the child and termination should be precluded because the child's mother has custody of the child. Additionally, he contends the court erred in admitting into evidence the child's therapist's reports. On our de novo review of the record, we affirm.

## I.      Background Facts and Proceedings

C.F.-H. was born in July 2007. The family came to the attention of the Iowa Department of Human Services (DHS) in October 2011, following a domestic-violence incident between the mother and father. The investigation resulted in a founded child abuse assessment against the father, and the family participated in voluntary services until the case was closed in June 2012. A second incident of domestic violence occurred between the parents in August 2012, again resulting in a founded child abuse assessment with both parents listed as responsible persons.

In November 2012, the juvenile court adjudicated C.F.-H. a child in need of assistance (CINA), due to the allegations of domestic violence between the parents. The father and mother have never been married, and no custody order existed at the time of the adjudicatory order. The court placed the child in the physical custody of the mother under the supervision of DHS, where he remained throughout the CINA and termination proceedings, and granted the father

visitation at the discretion of DHS. In December 2012, the court entered a dispositional order confirming the CINA adjudication and continuing custody of the child with the mother and visitation for the father.

In June 2013, the mother moved for concurrent jurisdiction, which the juvenile court granted. In June 2014, the district court granted temporary joint legal custody to the parents, awarded physical custody of the child to the mother, increased the father's visitation with the child, and ordered the father to pay child support. The district court noted the father was in treatment for a substance-abuse problem and had only seen the child four times for two hours since the previous October. Prior to the custody order, the father was exercising supervised visitation with the child once a month for two hours; the district court expanded the supervised visitation to once a week for three hours. In March 2015, the district court entered a custody decree pursuant to a stipulation by the parties. The district court awarded joint legal custody to the parents, physical care to the mother, and liberal visitation to the father. The district court also ordered the father to pay to the mother $420 per month in child support and $112.50 per month in cash medical support. Following entry of the district court's custody order, the father moved for dismissal of the juvenile case, which the juvenile court denied.

In February 2016, the State filed a petition to terminate the father's parental rights.[1] The juvenile court held a hearing on the matter on dates in

---

[1] The State did not seek termination of the mother's parental rights, and the child remained in the mother's physical custody.

March and April. In May, the court entered an order terminating the father's parental rights pursuant to Iowa Code section 232.116(1)(e) and (f) (2015).

## II. Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)). Our primary consideration is the best interests of the child. Se*e In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

## III. Analysis

"Our review of termination of parental rights under Iowa Code chapter 232 is a three-step analysis." *In re M.W.*, 876 N.W.2d at 219. First, we must determine whether the State established the statutory grounds for termination by clear and convincing evidence. *See* Iowa Code § 232.116(1); *In re M.W.*, 876 N.W.2d at 219. Second, if the State established statutory grounds for termination, we consider whether termination is in the child's best interests under section 232.116(2). *See In re M.W.*, 876 N.W.2d at 219–20. Finally, we consider whether any exceptions under section 232.116(3) weigh against termination. *See id.* at 220.

### A. Statutory Grounds

The juvenile court terminated the father's parental rights under Iowa Code section 232.116(1)(e) and (f). When a court terminates parental rights on more than one ground, we may affirm the order on any of the statutory grounds supported by clear and convincing evidence. *In re D.W.*, 791 N.W.2d 703, 707

(Iowa 2010). Evidence is clear and convincing "when there are no 'serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence.'" *In re M.W.*, 876 N.W.2d at 219 (alteration in original) (citation omitted).

Iowa Code section 232.116(1)(f) provides the court may terminate a parent's parental rights if the State proves the following by clear and convincing evidence:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the [time of the termination hearing] the child cannot be returned to the custody of the child's parents as provided in section 232.102.

The father does not dispute the child is over the age of four, the child has been adjudicated CINA, or that the child cannot be returned to his custody. His argument on appeal focuses on the third element, arguing the child was never removed from his custody or care because no formal removal order was ever entered in the underlying CINA matter. The father acknowledges the CINA adjudicatory, dispositional, and review orders provided the child should be placed in the mother's physical custody but claims these orders did not remove the child from his care. He further asserts the district court's award of joint legal custody to him while the CINA case was ongoing is proof the child was not removed from his custody.

In support of his argument, he claims Iowa Code sections 232.78 (temporary custody pursuant to an ex parte court order), .95 (temporary removal hearing), or .96(10) (permitting entry of a temporary removal order following adjudicatory hearing) require a temporary or permanent removal order to have been entered prior to termination. Section 232.96(10) provides, following entry of an adjudicatory order, the court "*may* issue an order authorizing temporary removal of the child from the child's home." (Emphasis added.) Likewise, sections 232.95 and 232.78 also permit a court to enter an order for temporary removal of the child. However, none of these sections *require* a juvenile court to enter a temporary or permanent removal order; rather all provide the court *may* enter such an order. *See* Iowa Code §§ 232.78, .95, .96. Section 232.116(1)(f) provides that in order for a parent's rights to be terminated, a child must have been removed from the parent's "physical custody."

Here, the juvenile court's adjudicatory, dispositional, and review orders, as well as the district court's custody orders, all place the child in the mother's physical custody and allow the father visitation. The father and mother did not live together at the time of the adjudicatory hearing or anytime thereafter. Thus, the child cannot be said to have been in the father's physical custody since at least the time of entry of the adjudicatory order in November 2012. The termination hearing was held three and one-half years later on dates in March and April 2016. The State clearly proved that, pursuant to juvenile court orders, the child had not been in the physical custody of the father for at least twelve of the last eighteen months leading up to the hearing. Any right he may have had,

or claims to have had, to physical custody during the applicable statutory period had been eliminated—i.e., removed—by existing court orders.

The father also complains the State failed to warn him that any removal may result in termination of his parental rights, which he asserts is required under Iowa Code sections 232.78(7)(b), .95(3), or .96(10)(a). The father also asserts the district court's award of joint legal custody to him in March 2015 supported his belief that termination would not occur.

Section 232.96(10) provides, if the court issues a temporary removal order, the order must include "[a] statement informing the child's parent that the consequences of a permanent removal may include termination of the parent's rights with respect to the child." Iowa Code § 232.96(10)(b); *see also id.* §§ 232.78(7)(b), .95(2)(a)(3). In our analysis above, we determined these sections *allow* a court to enter an order removing the child from a parent's physical custody but do not *require* such an order. The word "removed,"[2] as used in section 232.116(1)(f), does not equate with the statutory provisions regulating a "removal order" or an order for "removal," either temporary or permanent. Without a statutory requirement that a removal order be entered in a CINA case, we cannot find that either the State or the juvenile court was required to inform the father that the orders legally removing the child from his physical custody could lead to termination of his parental rights to his child.[3]

---

[2] "Removed" is defined as taking something away. *See Removed*, *Webster's Third New International Dictionary* (unabr. ed. 2002).

[3] Moreover, the father testified at the termination hearing that during a visit with the child in late 2014 or early 2015, he told the child he was not going to have his rights terminated. At a minimum, this shows the father was on notice of the possibility of termination more than a year before the termination petition was filed.

Additionally, the father asks us to overturn a long line of cases that interpret the term "parents" under section 232.116 to include both the singular and the plural, permitting the termination of one parent's parental rights while the child remains in the physical custody of the other parent. *See In re N.M.*, 491 N.W.2d 153, 155 (Iowa 1992) ("It is not in the children's best interests to interpret the language of the subsections to prevent termination of the noncustodial parent's rights when the children are placed in the separate home of the other parent.");[4] *In re J.P.*, No. 15-1084, 2015 WL 5309113, at *3 (Iowa Ct. App. Sept. 10, 2015) ("After an examination of the entirety of section 232.116(1), and considering the legislative intent, it is clear to us that under section 232.116(1)(h) one parent may have parental rights terminated while a child remains in the care of the other parent."); *see also* Iowa Code § 4.1(17) ("Unless otherwise specifically provided by law the singular includes the plural, and the plural includes the singular."); Iowa Code § 232.1. Alternatively, he requests we find that under the unique facts of this case—because no removal order was entered and no statement accompanied the CINA orders warning the father a removal could result in termination—those cases interpreting the statute should be distinguished and should not apply here. We agree with the interpretation

---

[4] The applicable statutory language in effect for the case of *In re N.M.* provided, "The custody of the child has been transferred from the child's parents for placement pursuant to section 232.102 for at least twelve of the last eighteen months . . . ." Iowa Code § 232.116(1)(e)(3) (1991). In 1992, the Iowa Legislature amended the section—and a subsequent legislature renumbered it to 232.116(1)(f)—to read: "The child has been removed from the physical custody of the child's parents . . . ." 1992 Iowa Acts 544. Pre-amendment, the statutory language referenced Iowa Code section 232.102 to make clear the transfer of custody must have been pursuant to that section. As it amended the statute, the legislature could have easily referenced the "removal" statutes if it intended to require such a removal and the corresponding procedures. Instead, the legislature simply said "removed from the physical custody."

reached in prior cases and decline the father's invitation to disturb it. *State v. Eichler*, 83 N.W.2d 576, 578 (Iowa 1957) ("If our previous holdings are to be overruled, we should ordinarily prefer to do it ourselves."); *State v. Hastings*, 466 N.W.2d 697, 700 (Iowa Ct. App. 1990) ("We are not at liberty to overturn Iowa Supreme Court precedent.").

Accordingly, we affirm the termination of the father's parental rights on statutory grounds under section 232.116(1)(f).

### B. Best Interests

The father next contends termination is not in the child's best interests under Iowa Code section 232.116(2). Even if a statutory ground for termination is met under section 232.116(1), a decision to terminate must still be in the best interests of the child under section 232.116(2). *In re M.W.*, 876 N.W.2d at 224. In considering whether to terminate parental rights, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2).

The father claims termination is not in the child's best interests because the child would effectively be denied over $50,000 in child support over the years of the child's minority if the father's rights were terminated. A parent's legal obligation to support a child "continues during juvenile court proceedings, even after a child has been removed from parental custody or has been determined to be a CINA." *In re H.S.*, 805 N.W.2d 737, 745 (Iowa 2011). "However, when parental rights are terminated in Iowa, a parent's support obligation ends." *Id.* Our supreme court has held a loss of financial support is an insufficient reason

not to terminate a parent's rights if termination is otherwise in the child's best interests. *Id.* at 748–49. Section 232.116(2) "focus[es] on the child's safety, long-term nurturing and growth, and physical, mental, and emotional condition and needs, rather than court-ordered child support." *Id.* at 748.

The father has made only minimal progress with services. When the case was opened in 2012, the father generally did not cooperate with services. In 2014, the father participated in services and started making progress on the case permanency plan. By February 2015, the father had progressed to unsupervised overnight weekend visits with the child. However, in April 2015, the visits returned to fully supervised due to concerns regarding the father's mental health and possible drug use. At that point, the father stopped cooperating with services and became threatening toward DHS and Family Safety, Risk, and Permanency (FSRP) service providers. The father spoke negatively about the mother to the child during visits. Following visits, the child acted out at home and at school. The father's last supervised visit with the child occurred in late June 2015; since that time, the child's behaviors at home and at school have improved. The father has not had phone contact with his child since last August.

Furthermore, the father has refused to take responsibility for the role he has played in this case and has instead blamed DHS for the unfortunate circumstances his child is in. Although the father has participated in inpatient substance-abuse treatment on three occasions, he has failed to follow through with aftercare services. He has also refused to participate in court-ordered drug screenings, despite this being a necessary requirement for visitation with the child. The father has not had stable housing since 2013, and at the time of the

termination hearing, he was not staying at a place where the child could have visits with him. Throughout the underlying CINA case, the mother obtained three separate no-contact orders against the father due to his aggressive behavior and threats directed toward her. He has not completed the court-ordered batterer's education program or psychological evaluation. The juvenile court found no indication the father would ever harm the child at issue but concluded the father's aggressive and threatening behaviors toward DHS, FSRP service providers, and the mother have negatively impacted the child's mental and emotional conditions and needs.

Ultimately, the juvenile court concluded termination was in the child's best interests. The juvenile court reasoned

> Although a termination of parental rights will have a negative impact on [C.F.-H.] both financially and emotionally, the court concludes that the long-term impact will be less detrimental than the ongoing disruption, instability, and harm that would be caused by continuing the parent-child relationship. [C.F.-H.] has achieved consistency and stability in [the] mother's care, but . . . remains in need of permanency. Under the circumstances of this case, the court concludes that permanency for [C.F.-H.] can best be achieved by a termination of [the] father's parental rights.

"It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012) (quoting *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010)). DHS and the juvenile court have been involved in this child's life since 2011; termination will provide the child with permanency and stability. We agree with the juvenile court's conclusion and find termination of the father's parental rights is in the child's best interests.

### C. Permissive Factors

"Once we have established that the termination of parental rights is in the children's best interests, the last step of our analysis is to determine whether any exceptions in section 232.116(3) apply to preclude the termination." *In re M.W.*, 876 N.W.2d at 225. The father asserts an exception under section 232.116(3) applies because (1) he has a strong bond with the child, *see* Iowa Code § 232.116(3)(c) (providing a court may decide not to terminate a parent's parental rights if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."), and (2) the mother has custody of the child, *see* Iowa Code § 232.116(3)(a) (providing "[t]he court need not terminate the relationship between the parent and child if . . . [a] relative has legal custody of the child"). "'The factors weighing against termination in section 232.116(3) are permissive, not mandatory,' and the court may use its discretion, 'based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship.'" *In re A.M.*, 843 N.W.2d at 113 (citation omitted).

The juvenile court acknowledged the father and child share a bond and the child would like to see the father. However, the court concluded their shared bond is not healthy for the child. The record shows the child acted out at home and school after visits or phone contact with the father. After contact ceased between the father and child, the child's behaviors improved. DHS, the guardian ad litem, and the mother all recommended termination of the father's parental rights. The father has refused to address the mental-health and substance-

abuse concerns that have permeated this case. The father speaks negatively about the mother to the child, has not addressed the domestic violence concerns that led to the child's adjudication, and has repeatedly made threats and acted aggressively toward the mother resulting in three no-contact orders against the father. Based upon our de novo review of the record, we find no permissive factors under section 232.116(3) exist weighing against termination of the father's parental rights.

### D.     Therapist's Reports

The father argues the juvenile court erred in admitting the child's therapist's reports because the State failed to lay foundation for the exhibits and the father was not able to cross-examine the therapist at the termination hearing. The State subpoenaed the child's therapist but ultimately decided not to call the therapist as a witness.

The record shows the father had the opportunity to contact the therapist by telephone during the termination hearing to address the father's concerns or subpoena the therapist for the second day of the hearing but failed to do so. Nevertheless, the juvenile court did not rely on these reports in making its determination. Likewise, we do not rely on these reports in our de novo review affirming the juvenile court's determination. Thus, even if we assume any of the challenged exhibits were not admissible, we find no reversible error. *In re A.S.*, 743 N.W.2d 865, 869 (Iowa Ct. App. 2007). We arrive at the same result as the juvenile court without consideration of the objectionable exhibits. *See In re Adkins*, 298 N.W.2d 273, 278 (Iowa 1980). Moreover, the evidence is cumulative because the evidence had already been admitted in the CINA proceedings

without objection, and the juvenile court took judicial notice of the CINA file at the termination hearing without objection. *See id.* (permitting the juvenile court in a termination proceeding to take judicial notice of the evidence in the underlying CINA file).

**IV.    Conclusion**

We find the State proved the statutory grounds for termination of the father's parental rights by clear and convincing evidence and termination is in the child's best interests.   We further find no permissive factors weighing against termination of the father's parental rights exist so as to preclude termination. Finally, to the extent the therapist's reports were not admissible, we find no reversible error.   We affirm the juvenile court's order terminating the father's parental rights.

**AFFIRMED.**

Bower, J., concurs; Danilson, C.J., dissents.

**DANILSON, Chief Judge** (dissenting)

I respectfully dissent. The child's parents were never married, and no court order was ever entered granting the father physical care. Accordingly, the child was never removed from the father's physical care as required to be established before granting termination under Iowa Code section 232.116(1)(e) or (f) (2015). The State even acknowledges removal is required in its response to the petition on appeal when it discusses the necessity of the warning about the potential for termination of parental rights:

> Although there was no warning that removal could result in termination of parental rights, this warning is only required if there is a formal removal order. Several of the grounds for termination of parental rights do not require a warning that termination may occur because they do not involve a formal removal of physical custody. *See* Iowa Code section 232.116(1)(b), (d), (g), and (i).

But here, the juvenile court only terminated based upon two alternatives—section 232.116(1)(e) and (f)—and both alternatives require proof that "[t]he child has been removed from the physical custody of the child's parents." I agree with the majority that the juvenile court is not mandated to enter a removal order and these circumstances are a perfect example where a removal order was not required. But to terminate parental rights under the alternatives in section 232.116(1)(e) and (f), proof of removal is a necessary element the State must establish by clear and convincing evidence. Without proof of removal, the State must rely upon one of the alternative grounds for termination identified above in the State's response to the petition on appeal. The order terminating parental rights should be reversed.