# IN THE COURT OF APPEALS OF IOWA

No. 21-1150
Filed October 19, 2022

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**ALISHIA SUE DAWN DEWBRE,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Emmet County, Ann M. Gales, District Associate Judge.

Alishia Dewbre appeals her conviction for operating while intoxicated, asserting that the results of a blood test for alcohol concentration should have been suppressed. **AFFIRMED.**

Jack Bjornstad of Jack Bjornstad Law Office, Spirit Lake, for appellant.

Thomas J. Miller, Attorney General, and Timothy M. Hau and Louis Sloven, Assistant Attorneys General, for appellee.

Considered by Bower, C.J., and Tabor, Greer, Schumacher, Ahlers, Badding, and Chicchelly, JJ.

**AHLERS, Judge.**

Alishia Dewbre appeals following her conviction for operating while intoxicated (OWI). She contends the State violated her right against self-incrimination under article I, section 9 of the Iowa Constitution by subjecting her to a blood draw obtained via a search warrant and the district court should have granted her motion to suppress the blood test results.

## I. Background Facts and Prior Proceedings

In the early-morning hours of a Friday, a law enforcement officer observed a truck weave back and forth repeatedly and cross the center line of a state highway. The officer pulled the truck over and identified Dewbre as the driver. Dewbre emitted an odor of alcoholic beverage, her eyes were watery and bloodshot, and she admitted to drinking. After Dewbre refused field sobriety testing and a preliminary breath test, the officer arrested Dewbre for OWI.

The arresting officer did not invoke implied consent. *See* Iowa Code § 321J.6 (2019) (establishing a procedure to obtain blood, breath, or urine specimens from vehicle operators suspected of operating under the influence of drugs or alcohol). Instead, the officer sought and obtained a search warrant for a "blood, urine, and/or breath specimen from" Dewbre. Law enforcement transferred Dewbre to a hospital where a lab technician took a blood specimen from her. The specimen was tested and revealed that Dewbre had a blood alcohol level of 0.126. The State charged Dewbre with OWI.

Dewbre filed a motion to suppress "any and all evidence seized as a result of the search warrant" because she claimed taking the blood specimen violated her rights under the Iowa Constitution. Following a suppression hearing and

briefing from the parties, the court denied the motion to suppress. Dewbre stipulated to a trial on the minutes, and the court found her guilty of OWI.

Dewbre appeals and requests we reverse the district court's ruling on the motion to suppress.

## II. Scope and Standard of Review

Because Dewbre challenges the suppression ruling on constitutional grounds, our review is de novo. *State v. Hunt*, 974 N.W.2d 493, 496 (Iowa 2022). "We review the entire record to independently evaluate the totality of the circumstances and examine each case 'in light of its unique circumstances.'" *State v. Hauge*, 973 N.W.2d 453, 458 (Iowa 2022) (quoting *State v. Brown*, 930 N.W.2d 840, 844 (Iowa 2019)).

## III. Discussion

Dewbre remains faithful to the argument she raised at the suppression hearing—she claims article I, section 9 of the Iowa Constitution and *State v. Height*, 91 N.W. 935 (Iowa 1902), prohibit compelled physical examinations or procedures that would incriminate a defendant. She reasons that taking her blood specimen, even with a warrant, violated her state constitutional right against self-incrimination.

Although the Iowa Constitution does not explicitly provide a right against self-incrimination, our supreme court has found such a right implicitly exists via the due process clause in article I, section 9 of the Iowa Constitution. *See State v. Gibbs*, 941 N.W.2d 888, 894 (Iowa 2020). *Height*, an opinion nearly one hundred and twenty years old, discussed this right and its bounds. 91 N.W. at 936–38.

In *Height*, the defendant was accused of committing a sex act on a ten-year-old child who "was found to be affected with venereal disease." *Id.* at 935. While the defendant was jailed and awaiting trial, physicians examined the defendant's genitals at the direction of the prosecutor and over the defendant's objections. *Id.* at 936. The physicians discovered the defendant was afflicted with the same disease as the child. *Id.* at 935. That evidence was presented to the jury. *Id.* The supreme court completed a detailed discussion of article I, section 9 of the Iowa Constitution before ultimately determining the evidence should have been excluded under article I, section 8 of the Iowa Constitution because the search was conducted without a warrant. *Id.* at 936–40.

The supreme court referenced *Height* a few years later in *Wragg v. Griffin*, when it stated, "Even when charged with the gravest of crimes, [a defendant] cannot be compelled to give evidence against himself, nor can the [S]tate compel him to submit to a medical or surgical examination, the result of which may tend to convict him of a public offense." 170 N.W. 400, 403 (Iowa 1919) (citing *Height*, 91 N.W. at 935). However, *Wragg* did not address whether the petitioner's right against self-incrimination, under the state or federal constitution, was violated when he was detained for testing to determine whether he had a sexually transmitted infection. In fact, neither article I, section 9 of the Iowa Constitution nor the Fifth Amendment to the United States Constitution are referenced or discussed anywhere in *Wragg*. Instead, *Wragg* answered the question,

> May the local board of health of the city of Des Moines, upon suspicion that the petitioner is afflicted with a venereal disease, or has been exposed to such contagion, lawfully order him under arrest and subject him by force to an examination of his person and compel him against his will to permit a quantity of blood to be extracted from

his veins, and then be held in continued durance until the blood has been sent to an expert in a distant city and by test thereof it is determined whether such petitioner is or is not in fact so diseased?[1]

*Id.* at 401. So *Wragg* provides scant support for Dewbre's self-incrimination argument. Still, Dewbre argues neither *Height* nor *Wragg* have been explicitly or implicitly overruled, so we must follow them to conclude the Iowa Constitution prohibits compelled medical examinations of a defendant for the purposes of collecting evidence to use against the defendant.

The State strongly and persuasively pushes back on Dewbre's claim. At the outset, we agree with the State's characterization of the portions of *Height* and *Wragg* that Dewbre relies upon as dicta rather than as substantive holdings. That reconciliation helps explain why neither was expressly overruled by our supreme court in the years following. Moreover, in *Aguilar Olvera v. State*, No. 18-0930, 2019 WL 3943995, at *4–5 (Iowa Ct. App. Aug. 21, 2019), we concluded *Height* and its analysis of the examination of the defendant without a warrant were no longer applicable given developments in our laws in the years since *Height*. So we look elsewhere for guidance.

In *State v. Johnson*, our supreme court addressed whether a defendant was entitled to a separate determination by a separate jury as to whether a blood specimen taken from him was obtained through coercion and trickery, making it involuntarily obtained and impermissible to use to prosecute him for OWI. 135 N.W.2d 518, 524 (Iowa 1965). *Johnson* determined such process was not

---

[1] *Wragg* answered this question in the negative explaining, "before the courts will uphold such an exercise of power, it must be authorized by a clear and definite expression of the legislative will [that] we do not have." 170 N.W. at 403.

necessary. 135 N.W.2d at 524. It found the defendant had freely and voluntarily given his consent to the taking of his blood specimen. *Id.* at 525. The court went on to note "the evidence relating to the analysis of appellant's blood sample taken and the explanatory testimony of the analyst were admissible, and that their admission did not violate appellant's privilege against self-incrimination under either the federal or state constitutions." *Id.* This pronouncement seems fatal to Dewbre's claim. Nonetheless, we go on to highlight the pertinent distinction in incriminatory evidence.

We make a fundamental distinction between testimonial and non-testimonial evidence from a defendant. In *State v. Sefcheck*, the defendant claimed his *Miranda* rights were violated, a claim rooted in the Fifth Amendment right against self-incrimination, by the admission of samples of his handwriting. 157 N.W.2d 128, 135 (Iowa 1968). Our supreme court rejected the defendant's Fifth Amendment claim and explained, "The constitutional safeguards upon which the defendant relies do not extend to non-testimonial evidence." *Id.* It went on to clarify that

> [t]he privilege against self-incrimination under *both federal and state rules*, is limited to evidence by [c]ommunication in whatever form that communication might take. *It does not protect a defendant, by the taking of blood or other bodily fluid*, by the use of fingerprints, or by the showing of some physical trait or characteristic, from becoming the source of real or physical evidence against himself.

*Id.* (emphasis added). That explanation would seem to resolve the case before us—Dewbre's claim relates to non-testimonial evidence (the blood specimen), so *Sefcheck* seemingly defeats her claim under article I, section 9. But Dewbre argues we cannot put stock in *Sefcheck* because we cannot assume its reference

to the "taking of blood or bodily fluid" includes compelled blood draws. Instead, she contends we should infer that the reference extends only to voluntary blood draws.

Dewbre's argument misses the mark for two reasons. First, *Sefcheck* makes a simple distinction between testimonial and non-testimonial evidence and concludes federal and state prohibitions against self-incrimination only apply to testimonial evidence. *See id.* Second, we see nothing in *Sefcheck* to infer a distinction between how we treat compelled and non-compelled non-testimonial evidence. *See id.* So, when determining if the state and federal prohibitions against compelled self-incrimination are triggered, the real inquiry is whether the evidence in question is testimonial or non-testimonial, not whether the non-testimonial evidence was compelled or not compelled.

Dewbre's argument also ignores the availability of a warrant to aid in the investigation of an OWI offense. Dewbre suggests that obtaining a warrant for a blood draw was unreasonable because the officer could have invoked implied-consent procedures instead. This suggestion is negated by statute and case law. Iowa Code section 321J.18 makes it clear that implied-consent procedures are not the exclusive means for testing, as it notes "[t]his chapter does not limit the introduction of any competent evidence bearing on the question of whether a person was under the influence of an alcoholic beverage." And *State v. Oakley* held that Iowa Code chapter 321J does not preempt the general search warrant provisions of chapter 808. 469 N.W.2d 681, 682–83 (Iowa 1991). By obtaining a warrant, the officer provided more safeguards to Dewbre than if the officer had invoked implied consent. Implied consent is invoked based on the judgment made

by the officer. *See* Iowa Code § 321J.6(1) (permitting invocation of implied-consent testing procedures by "a peace officer having reasonable grounds to believe that the person was operating a motor vehicle" while intoxicated). In contrast, a warrant is issued based on probable cause findings of a neutral and detached third party—the judicial officer issuing the warrant. *See Johnson v. United States*, 333 U.S. 10, 13–14 (1948) (noting that the protections of the warrant requirement consist of requiring the inferences justifying a search should "be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime"). By seeking a warrant, the officer provided Dewbre with more safeguards than if the officer had relied on implied-consent procedures. We find Dewbre's claim unpersuasive that her due process rights protecting her against self-incrimination were violated by providing her with more process and more judicial oversight than Iowa Code chapter 321J requires.

Dewbre makes one last attempt to distinguish *Sefcheck*. She argues it is implausible that the supreme court intended its opinion to overrule *Height* and *Wragg* when the claim before the court was rooted in the federal constitution and not article I, section 9 of the Iowa Constitution. But as previously noted, *Height*'s references to article I, section 9 were dicta and *Wragg* does not mention article I, section 9. Thus, neither case involved substantive holdings to be overruled. So, even though *Sefcheck* did not expressly overrule either case, we do not view *Sefcheck* as accidentally dipping its toe where it did not intend to go. Rather *Sefcheck* provided clarity as to the bounds of the right against self-incrimination in Iowa, which the court already referenced in *Johnson*, 135 N.W.2d at 525.

Dewbre also argues we should interpret the Iowa Constitution as providing individuals with greater protection than the federal constitution. She points to Iowa's history of interpreting its constitution as being more protective than the federal constitution. *See State v. Baldon*, 829 N.W.2d 785, 820–21 (Iowa 2013) (Appel, J., specially concurring) (discussing instances where our supreme court interpreted the Iowa Constitution in a different manner than the United States Constitution). She seems to ask us to interpret article I, section 9 to prohibit both compelled testimonial and non-testimonial evidence from a defendant. Yet doing so would require us to run afoul of *Sefcheck*, which we cannot overturn. *State v. Hastings*, 466 N.W.2d 697, 700 (Iowa Ct. App. 1990) ("We are not at liberty to overturn Iowa Supreme Court precedent.").

To the extent the language from *Sefcheck* is also dicta, we decline to stray from its reasoning when interpreting article I, section 9. We are cognizant that the Iowa Constitution may be interpreted in a different manner than the federal constitution. *See Nguyen v. State*, 878 N.W.2d 774, 755 (Iowa 2016). "However, 'our independent authority to construe the Iowa Constitution does not mean that we generally refuse to follow the United States Supreme Court decisions.'" *Id.* (citation omitted). We decline the invitation to interpret the implicit right against self-incrimination found in article I, section 9 of the Iowa Constitution as providing greater protection against self-incrimination than the explicit right found in the Fifth Amendment.

Because we treat article I, section 9 and Fifth Amendment claims alike, we may look to Fifth Amendment cases to determine the bounds of what compelled evidence is prohibited under article I, section 9. In doing so, it is apparent that

compelled non-testimonial evidence, like Dewbre's blood draw, passes constitutional muster. In *Schmerber v. California*, the Supreme Court held that the Fifth Amendment right against self-incrimination "protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature, and that the withdrawal of blood and use of the analysis [of the blood] d[oes] not involve compulsion to these ends." 384 U.S. 757, 761 (1966). It went on to explain,

> Not even a shadow of testimonial compulsion upon or enforced communication by the accused was involved either in the extraction or in the chemical analysis [of the accused's blood]. . . . Since the blood test evidence, although an incriminating product of compulsion, was neither [the accused]'s testimony nor evidence relating to some communicative act or writing by the petitioner, it was not inadmissible on privilege grounds.

*Id.* at 765. Accordingly, Dewbre's motion to suppress was correctly denied.

## IV. Conclusion

The due process clause of article I, section 9 of the Iowa Constitution provides individuals with a right against self-incrimination. However, that right only prohibits compelled testimonial evidence from a defendant. Obtaining and testing a sample of Dewbre's blood via a search warrant did not violate her right against self-incrimination.

**AFFIRMED.**