## IN THE COURT OF APPEALS OF IOWA

No. 19-0863
Filed June 17, 2020

**STATE OF IOWA,**
　　　Plaintiff-Appellee,

**vs.**

**JAMES EDWARD BRICE,**
　　　Defendant-Appellant.

_____

Appeal from the Iowa District Court for Polk County, Richard B. Clogg, Judge.

James Brice appeals his conviction of indecent exposure. **AFFIRMED.**

Edward S. Fishman of Hopkins & Huebner, P.C., Adel, for appellant.

Thomas J. Miller, Attorney General, and Richard Bennett, special counsel, for appellee.

Considered by Tabor, P.J., and Mullins and Schumacher, JJ.

**MULLINS, Judge.**

James Brice appeals his conviction of indecent exposure. He challenges the sufficiency of the evidence supporting his conviction and argues his trial counsel was ineffective in various respects.

## I.      Background Facts and Proceedings

Upon the evidence presented at trial, a rational jury could make the following factual findings. Thomas Post is employed as the head of security for the overnight shift in a casino. At approximately 5:45 a.m. on July 22, 2018, Post and another security officer, Ryan Joint, were dispatched to an area of the casino in response to patrons' complaints of feeling "threatened by an individual who was exposing" himself. The officers advised surveillance to direct its attention to their location. The officers then "approached a gentleman, Mr. Brice," who "had his pants down lower than his waist and he had his penis in his right hand moving his hand back and forth, rapid motions." Post approached and questioned Brice what he was doing. Brice stood up, and the officers escorted him to an interview room.

Footage from the casino's surveillance system was admitted as evidence and played for the jury. The footage discloses the following. Brice seated himself at a slot machine just before 5:39 a.m. After swiveling in his chair for about a minute, he inserted his left hand into his pocket and then into the waistband of his pants. At 5:40 a.m., he placed his hand on his crotch area over the pants as two casino employees passed by him. Roughly twenty seconds later, he reinserted his hand into the waistband of his pants. He then inserted his hand all the way into his pants and began to fondle himself. He removed his hand from his pants a little

less than a minute later. About twenty seconds later, he lifted his shirt and exposed his stomach and returned his hand to his crotch area over his pants. Roughly another thirty seconds later, he reinserted his hands into his pants and continued to fondle himself. Approximately one minute later, Brice unbuckled his belt, slightly pulled down his pants and began stroking his penis outside of his pants. He continued to stroke his penis until confronted by Post and Joint about three and one-half minutes later, at which point the officers escorted Brice to an interview room, the roughly two-minute venture to which was also captured by the casino's surveillance system. During the timeframe Brice was stroking his penis, several individuals passed through the area. A little less than two minutes into the episode, a woman can be seen walking past Brice, making eye contact with him, immediately looking away while gaping her mouth wide open, and proceeding away in a more hurried fashion. Shortly thereafter, a second woman can be viewed, apparently upon signaling from the first woman outside the surveillance camera's view,[1] peering around a bank of slot machines, observing Brice, and then quickly about-facing and leaving the area. Shortly thereafter, the first woman circled back and made eye contact with Brice again, after which she proceeded to her nearby companions and presumably discussed the situation. The women then gathered nearby outside of Brice's view and on-looked while security arrived and escorted Brice away.

Brice was charged by trial information with indecent exposure. The matter proceeded to a jury trial. Following the presentation of evidence, Brice moved for

---

[1] The video evidence suggests the two women were at the casino together.

judgment of acquittal, arguing the State failed to prove his conduct was offensive to others.  The court denied the motion, concluding there was sufficient evidence to engender a question on the issue for the jury.  Ultimately, the jury found Brice guilty as charged.  Brice filed a post-trial motion in arrest of judgment, arguing "no witness testified that they were offended by the actions of the Defendant."  The motion was considered at the time of sentencing and was denied.  Brice appealed following the imposition of sentence.

## II.     Analysis

### A.      Sufficiency of the Evidence

Brice challenges the sufficiency of the evidence to support his conviction. Challenges to the sufficiency of the evidence are reviewed for corrections of errors at law.  *State v. Mathias*, 936 N.W.2d 222, 226 (Iowa 2019).  The court views "the evidence 'in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence.'"  *State v. Ortiz*, 905 N.W.2d 174, 180 (Iowa 2017) (quoting *State v. Huser*, 894 N.W.2d 472, 490 (Iowa 2017)). All evidence is considered, not just that of an inculpatory nature.  *See Huser*, 894 N.W.2d at 490.  "[W]e will uphold a verdict if substantial evidence supports it." *State v. Wickes*, 910 N.W.2d 554, 563 (Iowa 2018) (quoting *State v. Ramirez*, 895 N.W.2d 884, 890 (Iowa 2017)).  "Evidence is substantial if, 'when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt.'"  *Id.* (quoting *Ramirez*, 895 N.W.2d at 890). Evidence is not rendered insubstantial merely because it might support a different conclusion; the only question is whether the evidence supports the finding actually

made. *See Brokaw v. Winfield-Mt. Union Cmty. Sch. Dist.*, 788 N.W.2d 386, 393 (Iowa 2010). In considering a sufficiency-of-the-evidence challenge, "[i]t is not the province of the court . . . to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury." *State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006) (quoting *State v. Williams*, 695 N.W.2d 23, 28 (Iowa 2005)).

The State bears the burden of proving every element of a charged offense. *State v. Armstrong*, 787 N.W.2d 472, 475 (Iowa Ct. App. 2010). On the sole charge of indecent exposure, the jury was instructed the State must prove the following elements: (1) Brice "[e]xposed his genitals or pubes to someone who was not then the defendant's spouse," (2) he "did so with the specific intent to arouse the sexual desire of" himself, (3) the "conduct was offensive to viewers," and (4) Brice "knew or reasonably should have known that the act was offensive to another person."

Brice argues the evidence was insufficient to satisfy the third element, that his conduct was offensive to viewers.[2] He first argues the evidence was insufficient to show there were multiple viewers of his genitals or pubes. However, viewing the video evidence in the light most favorable to the State, which showed two women make eye contact with Brice while he was masturbating and then display body language indicating they saw what he was doing, we find the evidence

---

[2] Technically, the crime only requires one viewer to be offended. *See State v. Jorgensen*, 758 N.W.2d 830, 834 (Iowa 2008). The jury instruction specifically required multiple viewers. The State did not object to the instruction, so it serves as the law of the case for purposes of reviewing the sufficiency of the evidence. *See State v. Banes*, 910 N.W.2d 634, 639 (Iowa Ct. App. 2018).

sufficient to show there were multiple viewers of his genitals or pubes.[3]  He next argues the evidence was sufficient to show his conduct was offensive to viewers. He generally argues that no witness testified they considered his conduct offensive and the mere "fact that individuals saw [him] masturbating in public is not evidence that the viewers of this act were offended."  Brice takes the position that specific testimony of offensiveness by the viewers was required.  While we agree that it may not be presumed that all viewers of public masturbation are offended, the video evidence showed two women viewing Brice and quickly averting their eyes. Brice argues the patrons being threatened or frightened does not equate to taking offense.[4]  But the evidence shows two women observed Brice masturbating in public, after which they both looked away and distanced themselves from Brice. This is evidence the women were offended, *cf. In re C.R.*, No. 13-1538, 2014 WL 3930460, at *2 (Iowa Ct. App. Aug. 13, 2013) (concluding evidence was sufficient for delinquency adjudication of indecent exposure where girl turned away from the exposure, signaling she was offended), and, viewing the evidence in the light most favorable to the State, a rational jury could have concluded the women were offended.  We thus find the evidence sufficient to establish the challenged element.

Next, Brice argues the evidence was insufficient to show he was the perpetrator of the alleged crime.  He claims Post's on-the-stand identification of him—"I encountered that gentleman, Mr. Brice, during an incident at [the casino]

---

[3] The evidence shows Post was also a viewer.

[4] When questioned about the offensiveness of Brice's conduct on direct examination, Post responded, "I am not able to deem what's offensive.  The fact that we were dispatched to that location because patrons felt threatened and other employees of the [casino]."

on July 22nd, 2018 at approximately 5:45" a.m.—was insufficient to show he was the perpetrator of the crime. Brice ignores Post's testimony that he and Joint, "approached a gentleman, Mr. Brice," in response to the patrons' complaints, and Brice "had his pants down lower than his waist and he had his penis in his right hand moving his hand back and forth, rapid motions." He also ignores the video evidence depicting him as the perpetrator, which included several close-up shots of his face. We likewise conclude a rational jury could conclude Brice was the perpetrator of the crime upon the evidence presented.

Brice argues the court abused its discretion in denying his motion in arrest of judgment on the basis that the evidence was insufficient to show viewers were offended by his conduct. Having concluded, above, that the evidence was sufficient, we reject the challenge.

B.      Ineffective Assistance of Counsel[5]

Brice argues his counsel was ineffective in various respects. Appellate review of claims of ineffective assistance of counsel is de novo. *State v. Gordon*, 943 N.W.2d 1, ___, 2020 WL 2090108, at *2 (Iowa 2020). To succeed on his ineffective-assistance-of-counsel claims, Brice must establish "(1) that counsel failed to perform an essential duty and (2) that prejudice resulted." *State v. Kuhse*, 937 N.W.2d 622, 628 (Iowa 2020); *accord Strickland v. Washington*, 466 U.S. 668, 687 (1984). We "may consider either the prejudice prong or breach of duty first,

---

[5] Effective July 1, 2019, section 814.7 was amended to prohibit claims of ineffective assistance of counsel to be raised or decided on direct appeal. 2019 Iowa Acts ch. 140, § 31. Because judgment and sentence were entered prior to the statutory amendment's effective date, it does not apply to Brice's direct appeal. *See State v.* Macke, 933 N.W.2d 226, 228 (Iowa 2019).

and failure to find either one will preclude relief." *State v. McNeal*, 897 N.W.2d 697, 703 (Iowa 2017) (quoting *State v. Lopez*, 872 N.W.2d 159, 169 (Iowa 2015)).

### 1.     Hearsay objection

First, Brice claims counsel was ineffective in failing to object to Post's testimony that he received complaints from patrons "who felt threatened by an individual who was exposing" himself on hearsay grounds.  Upon our review of the evidence, we find no reasonable probability of a different outcome had the testimony never been placed before the jury and, as such, Brice suffered no prejudice.  *See State v. Booth-Harris*, ___ N.W.2d ___, ___, 2020 WL 1966529, at *11 (Iowa 2020).  Had the testimony never occurred, the jury would have still been provided with the most powerful piece of evidence supporting a finding of guilt, the video evidence depicting Brice masturbating and the patrons' response to it.  We find counsel was not ineffective on this point.

### 2.     Prosecutorial error[6]

Next, Brice claims his counsel was ineffective in failing to object to three instances of alleged prosecutorial error in closing arguments: (1) misstating the

---

[6] Claims relating to a prosecutor's behavior at trial have historically been referred to as prosecutorial misconduct.  However, our supreme court has adopted a distinction "between incidences of prosecutorial error and prosecutorial misconduct" and noted "[a] prosecutor who has committed error should not be described as committing misconduct." *State v. Schlitter*, 881 N.W.2d 380, 393–94 (Iowa 2016).  Prosecutorial misconduct occurs when "a prosecutor intentionally violates a clear and unambiguous obligation or standard imposed by law, applicable rule or professional conduct," or "recklessly disregards a duty to comply with an obligation or standard." *Id.* at 394 (citation omitted).  "Prosecutorial error occurs 'where the prosecutor exercises poor judgment' and 'where the attorney has made a mistake' based on 'excusable human error, despite the attorney's use of reasonable care.'" *Id.* (citation omitted).  In any event, the prosecutorial misconduct analysis "easily translates to an evaluation of prosecutorial error." *Id.*

law, (2) making a golden-rule argument, and (3) arguing law not contained in the jury instructions.

As to the claim the State engaged in prosecutorial error by allegedly misstating the law and making a golden-rule argument in closing arguments, Brice complains of the following statements by the prosecutor:

> Some of the things we talked about in voir dire is how this would make people feel, how we feel about, what's acceptable to society. So some of this we bring in, the jury brings in. You're allowed to use your thoughts and experiences as a ju[ror]. Is this behavior offensive? Is it culturally acceptable?
> . . . .
> . . . . Nobody here is masturbating right now, because we reasonably know it's offensive.

Brice argues these statements amount to an instruction to the jury that masturbating in public is offensive per se, which is an incorrect statement of the law. He additionally argues the statements asked the jurors to put themselves in the shoes of the victim and thus amounted to an improper golden-rule argument.

However, the jury was properly instructed to "[c]onsider the evidence using [its] observations, common sense and experience" and "make deductions and reach conclusions according to reason and common sense." Factfinders are allowed to rely on common knowledge, history, common sense, and experience and observations of the affairs of life. *See State v. Stevens*, 719 N.W.2d 547, 552 (Iowa 2006); *State v. Post*, 286 N.W.2d 195, 203 (Iowa 1979); *State v. Manning*, 224 N.W.2d 232, 236 (Iowa 1974). The prosecutor appropriately advised the jury it could do so and find Brice guilty based on the conduct the evidence showed he engaged in. Our supreme court has advised a prosecutor is allowed "to craft an argument that includes reasonable inferences based on the evidence." *State v.*

*Graves*, 668 N.W.2d 860, 876 (Iowa 2003) (quoting *State v. Davis*, 61 P.3d 701, 710–11 (Kan. 2003)). That is exactly what happened here. The central teaching of *Graves* is that the "defendant is entitled to have the case decided solely on the evidence." *Id.* at 874 (quoting *State v. Williams*, 334 N.W.2d 742, 744 (Iowa 1983)); *see also State v. Carey*, 709 N.W.2d 547, 556 (Iowa 2006). But as, noted, jurors can rely on their common sense and experience. *Graves* error occurs when the prosecutor attempts to incite the passions of the jury by going outside the record of evidence. *See Carey*, 709 N.W.2d at 556. The complained-of statements did nothing of the sort. As to the claim the prosecutor made an improper gold-rule argument, the prosecutor did not ask the jurors to place themselves in the shoes of the victims. Instead the prosecutor asked the jurors to apply their life experiences to the evidence before it. The statement does not impermissibly divert the jury's attention from the evidence or amount to an attempt to obtain a conviction based on sympathy for the victims. *See State v. Ayabarreno*, No. 13-0582, 2014 WL 465761, at *4 (Iowa Ct. App. Feb. 5, 2014).

Next, Brice argues the State committed error when it "cited law outside of the jury instructions when it stated in closing arguments that in Iowa you can only be married to one individual." We agree with the State that the legal prohibition of being married to more than one person in Iowa is common knowledge—which, as noted, jurors can rely upon—and there is no reasonable probability of a different outcome had counsel objected because the prosecutor merely provided the jury with information it was already apprised of. *See Booth-Harris*, ___ N.W.2d at___, 2020 WL 1966529, at *11. In addition, the video footage, which showed *two*

women's reactions to Brice's conduct, amounts to substantial evidence they were not married to Brice. Brice was not prejudiced, and counsel was not ineffective.

Finally, all Brice's claims of prosecutorial error and ineffective assistance of counsel in relation to the same would require a showing of prejudice to warrant relief. *See State v. Harrison*, 914 N.W.2d 178, 188 (Iowa 2018) (ineffective assistance); *Graves*, 668 N.W.2d at 869 (prosecutorial error). The jury was specifically instructed it must base its verdict only upon the evidence presented and the court's instructions. The jury was also instructed that statements, arguments, and comments by the lawyers are not instructions. Appellate courts presume juries abide by the court's instructions, *State v. Sanford*, 814 N.W.2d 611, 620 (Iowa 2012); *State v. Hanes*, 790 N.W.2d 545, 552 (Iowa 2010), and we are thus unconvinced the complained-of statements had any prejudicial effect on the jury's verdict.

### 3. Jury instruction

Brice argues his counsel was ineffective in failing to request a jury instruction stating "that the jury was not allowed to presume that viewers of public masturbation are offended." But the jury was instructed on the burden of proof and that the State must prove, with evidence, that the conduct was offensive to viewers. Again, we presume the jury followed these instructions and properly based its verdict on common sense, experience, and the evidence. *See Sanford*, 814 N.W.2d at 620; *Hanes*, 790 N.W.2d at 552. Again, we find no reasonable probability of a different outcome had the instruction been requested, no prejudice

resulted, and counsel was not ineffective. *See Booth-Harris*, ___ N.W.2d at___, 2020 WL 1966529, at *11.

### 4. Sufficiency of evidence

Brice argues, "To the extent that defendant's counsel failed to argue that the State failed to prove that anyone besides Post saw Defendant's genital or pubes in his motion for acquittal," counsel was ineffective.

When a defendant challenges counsel's effectiveness in relation to failing to preserve error on a challenge to the sufficiency of the evidence for want of an adequate motion for judgment of acquittal, the overarching question is "whether such a motion would have been meritorious." *See State v. Lilly*, 930 N.W.2d 293, 298 (Iowa 2019) (quoting *State v. Henderson*, 908 N.W.2d 868, 874–75 (Iowa 2018)). "If the record does not reveal substantial evidence to support the convictions, counsel was ineffective for failing to raise the issue. If, however, the record contains sufficient evidence, counsel's failure to raise the claim was not prejudicial and the claimant's ineffective-assistance-of-counsel claim fails." *State v. Albright*, 925 N.W.2d 144, 152 (Iowa 2019) (internal citation omitted). We proceed to the merits.

Viewing the evidence in the light most favorable to the State, we easily conclude that, in addition to Post, two women observed Brice's pubes or genitals. There is no requirement that the viewer testify to the fact of observance, the video footage provided substantial evidence that the victims observed Brice masturbating in public. The element of the crime enjoys substantial evidence, and counsel was not ineffective.

>    5.    Motion for new trial

Finally, Brice claims his counsel was ineffective in failing to move for a new trial on the ground that the jury's verdict was contrary to the weight of the evidence. If such a motion would have been meritless based upon the grounds urged upon appeal, counsel was not ineffective in failing to pursue it. *See State v. Tompkins*, 859 N.W.2d 631, 637 (Iowa 2015).

The district court may grant a defendant's motion for a new trial when the verdict is contrary to the weight of the evidence. Iowa R. Crim. P. 2.24(2)(b)(6); *State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016). "A verdict is contrary to the weight of the evidence only when 'a greater amount of credible evidence supports one side of an issue or cause than the other.'" *Ary*, 877 N.W.2d at 706 (quoting *State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006)). Had Brice's trial counsel raised a weight-of-the-evidence argument in a motion for a new trial, the district court would have considered whether more credible evidence "support[ed] the verdict rendered than support[ed] the alternative verdict." *Id.* This assessment "is broader than the sufficiency-of-the-evidence standard in that it permits the court to consider the credibility of witnesses." *Id.* At the same time, however, "it is also more stringent than the sufficiency-of-the-evidence standard in that it allows the court to grant a motion for a new trial only if more evidence supports the alternative verdict as opposed to the verdict rendered." *Id.* The grant of a new trial on weight-of-the-evidence grounds is appropriate "only in the extraordinary case in which the evidence preponderates heavily against the verdict rendered." *Id.*

Brice argues counsel should have raised the weight-of-the-evidence argument "based on the fact that the State failed to prove that anyone that did see [his] pubes or genitals was not his spouse and that there were multiple viewers." Again, the video evidence showed two women to observe Brice masturbating in open public. The women's reactions indicated both that the women were offended and they were not his spouses. Upon our review we are unable to conclude "more evidence supports the alternative verdict as opposed to the verdict rendered" and this is not an "extraordinary case in which the evidence preponderates heavily against the verdict rendered." *Id.*

## III.  Conclusion

We conclude Brice's conviction is supported by substantial evidence, and counsel was not ineffective as alleged. We affirm Brice's conviction of indecent exposure.

**AFFIRMED.**

Schumacher, J., concurs; Tabor, P.J., dissents.

**TABOR, Presiding Judge** (dissenting).

"You didn't hear tons of testimony today." The prosecutor uttered that understatement to the jury in closing argument. But the State was unapologetic about offering no witnesses to testify they were offended by seeing Brice's exposed penis. Instead, the prosecutor told the jurors, the "State didn't need to bring every single person in that saw it." But how about just one person to satisfy the offensiveness element?[7]

Because indecent exposure is "essentially a visible assault crime . . . the State needed to produce a victim who saw [Brice's] exposed genitals." *See State v. Isaac*, 756 N.W.2d 817, 819 (Iowa 2008) (citing Iowa Code § 709.9 (2005) (prohibiting the exposure of a person's genitals "to another" when the person knows or reasonably should know the act is offensive "to the viewer")). And, under the marshalling instruction here, the State had to prove the unwilling "victim-viewers" were "offended by the conduct." *See State v. Bauer*, 337 N.W.2d 209, 212 (Iowa 1983).

Rather than pointing to any testimony to satisfy that element, in closing argument the prosecutor asked the jurors: "Was it offensive to viewers?" "Is this behavior offensive?" "Is it culturally acceptable?" The prosecutor told the jurors they could go with their own feeling about "what's acceptable to society."

---

[7] As the majority points out, the instructions required the jury to find the "conduct was offensive to viewers" plural, while the statute requires only one offended viewer. But, because there was no objection, the requirement of at least two offended viewers is the law of the case.

But a criminal trial is not a philosophy class. Jurors don't get to convict someone of indecent exposure just because they personally believe masturbating in public is culturally unacceptable. *See In re C.C.*, No. 04-0120, 2004 WL 2002603, at *2 (Iowa Ct. App. Sept. 9, 2004) (refusing to "presume that all viewers of public masturbation are offended"). The State bears the burden of proving beyond a reasonable doubt that Brice's exposure offended the viewers.

Here, the prosecutor told the jury in opening statements that his intent was "to be quick and efficient" in trying the case. True to his word, the prosecutor called one witness, Thomas Post, the overnight security manager for Prairie Meadows. Post testified he saw Brice expose himself. But Post declined to say whether that behavior offended him, testifying, "I am not able to deem what's offensive."

So the State offered only surveillance video to prove that seeing Brice expose himself subjectively offended viewers. From that footage, the State argued the jurors could infer two or three other casino patrons were offended because they "keep a distance" from Brice after seeing his behavior. The majority agrees the video was sufficient evidence of guilt because it shows two women who looked away and distanced themselves from Brice. The majority relies on *In re C.R.*, No. 13-1538, 2014 WL 3930460, at *2 (Iowa Ct. App. Aug. 13, 2014), where an eight-year-old victim testified when she saw C.R.'s penis she was "a little bit scared" and turned away from the exposure, later reporting the incident to her mother. I see two important differences in *C.R.*: (1) the victim was a child and (2) she testified. Because the State did not call the women in the video as witnesses, we don't know

why they turned away.[8]  Plus, we don't know whether they saw Brice exposing himself.  And if they did, we don't know that exposure offended them.

The State contends video showing the patrons turn away serves as a proxy for sworn testimony that seeing the conduct offended them.  That contention ignores the fact that the video shows one of the women came back for a second look at Brice.  Under the State's logic, wouldn't that mean she was not offended?  In resisting the motion for judgment of acquittal, the State argued the court could infer the patrons were offended because they reported the incident to security.  But our court has required more than assisting with an investigation to satisfy the offensiveness element.  *See State v. Newell*, No. 06-0528, 2007 WL 1062943, at *1 (Iowa Ct. App. Apr. 11, 2007) (reversing indecent exposure conviction because State's argument required "reasonable fact-finder to read too much into [victim's] decision to record Newell's license plate number").

Even viewing the record in the light most favorable to the State, I cannot conclude the State's evidence was sufficient to show the "victim-viewers" were offended by Brice's exposure.  So I respectfully dissent.  I would remand for entry of judgment of acquittal.

---

[8] In moving for judgment of acquittal, defense counsel noted the State originally intended to call the other patrons to testify:

> The original minutes of testimony listed names of women that were witnesses.  But for whatever reason, the State chose not to bring them in here and not to have them testify.  And I think for that reason, they fail.  They have not proven [the] critical element that there was someone that was offended by his actions.